EXHIBIT A

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

EASTERN DISTRICT OF NEW YORK

Case number *(if known)* _____   Chapter   **7**

☐ Check if this an
amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

04/20

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | | | |
|---|---|---|---|
| 1. | Debtor's name | **QB Wash LLC** | |

| | | |
|---|---|---|
| 2. | All other names debtor used in the last 8 years<br><br>Include any assumed names, trade names and *doing business as* names | **DBA  Blvd Auto Spa** |

| | | |
|---|---|---|
| 3. | Debtor's federal **Employer Identification Number** (EIN) | **47-5607674** |

| | | | |
|---|---|---|---|
| 4. | Debtor's address | **Principal place of business** | **Mailing address, if different from principal place of business** |
| | | **138-77 Queens Boulevard**<br>**Jamaica, NY 11435**<br>Number, Street, City, State & ZIP Code | P.O. Box, Number, Street, City, State & ZIP Code |
| | | **Queens**<br>County | **Location of principal assets, if different from principal place of business**<br><br>Number, Street, City, State & ZIP Code |

| | | |
|---|---|---|
| 5. | Debtor's website (URL) | |

| | | |
|---|---|---|
| 6. | Type of debtor | ■ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))<br><br>☐ Partnership (excluding LLP)<br><br>☐ Other. Specify: _____ |

| Debtor | QB Wash LLC | Case number (*if known*) | |
|--------|-------------|--------------------------|--|
| | Name | | |

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

■ None of the above

B. *Check all that apply*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor.
See http://www.uscourts.gov/four-digit-national-association-naics-codes.

_____

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

■ Chapter 7

☐ Chapter 9

☐ Chapter 11. *Check **all** that apply:*

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,725,625. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

■ No.

☐ Yes.

| | District | When | Case number |
|--|----------|------|-------------|
| | District | When | Case number |

| Debtor | **QB Wash LLC** | Case number (*if known*) | |
|---|---|---|---|
| | Name | | |

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

■ No
☐ Yes.

List all cases. If more than 1, attach a separate list

| | | | | |
|---|---|---|---|---|
| Debtor | _____ | | Relationship | _____ |
| District | _____ | When | _____ | Case number, if known | _____ |

**11. Why is the case filed in *this district*?**

*Check all that apply:*

■ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

■ No
☐ Yes.   Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard?   _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other   _____

**Where is the property?**   _____
                              Number, Street, City, State & ZIP Code

**Is the property insured?**

☐ No

☐ Yes.   Insurance agency   _____

            Contact name   _____

            Phone   _____

---

**Statistical and administrative information**

**13. Debtor's estimation of available funds**    .

*Check one:*

☐ Funds will be available for distribution to unsecured creditors.

■ After any administrative expenses are paid, no funds will be available to unsecured creditors.

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ■ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
| ☐ 200-999 | | |

**15. Estimated Assets**

| | | |
|---|---|---|
| ■ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50  million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

**16. Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ■ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |

| Debtor | **QB Wash LLC** | Case number (*if known*) |
| | Name | |

☐ $50,001 - $100,000                  ☐ $10,000,001 - $50  million              ☐ $1,000,000,001 - $10 billion
☐ $100,001 - $500,000                ☐ $50,000,001 - $100 million            ☐ $10,000,000,001 - $50 billion
☐ $500,001 - $1 million               ☐ $100,000,001 - $500 million           ☐ More than $50 billion

| Debtor | QB Wash LLC | Case number (*if known*) | |
|---|---|---|---|
| | Name | | |

## Request for Relief, Declaration, and Signatures

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on     **February  8, 2021**
                MM / DD / YYYY

**X** **/s/ Zachary Sliver**                                        **Zachary Sliver**
Signature of authorized representative of debtor                     Printed name

Title

**18. Signature of attorney**

**X** **/s/ Gregory M. Messer**                          Date **February  8, 2021**
Signature of attorney for debtor                              MM / DD / YYYY

**Gregory M. Messer 7539**
Printed name

**Law Office of Gregory Messer**
Firm name

**26 Court Street**
**Suite 2400**
**Brooklyn, NY 11242**
Number, Street, City, State & ZIP Code

Contact phone   **718 858-1474**        Email address   **gmesser@messer-law.com**

**7539 NY**
Bar number and State

**Fill in this information to identify the case:**

Debtor name    **QB Wash LLC**

United States Bankruptcy Court for the:    EASTERN DISTRICT OF NEW YORK

Case number (if known) _____

☐ Check if this is an
amended filing

## Official Form 202
# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

| | Declaration and signature |
|---|---|

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐   *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
☐   *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
☐   *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
☐   *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
☐   *Schedule H: Codebtors* (Official Form 206H)
☐   *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
☐   Amended *Schedule*
☐   *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
☐   Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **February 8, 2021**      X **/s/ Zachary Sliver**
                                                 Signature of individual signing on behalf of debtor

                                                 **Zachary Sliver**
                                                 Printed name

                                                 Position or relationship to debtor

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case:</strong></td></tr>
<tr><td>Debtor name</td><td><strong>QB Wash LLC</strong></td></tr>
<tr><td>United States Bankruptcy Court for the:</td><td>EASTERN DISTRICT OF NEW YORK</td></tr>
<tr><td>Case number (if known)</td><td></td></tr>
</table>

☐ Check if this is an amended filing

## Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals 12/15

| Part 1: | Summary of Assets |
| --- | --- |

1. **Schedule A/B: Assets-Real and Personal Property** (Official Form 206A/B)

   **1a. Real property:**
   Copy line 88 from *Schedule A/B*.................................................................................... $ 0.00

   **1b. Total personal property:**
   Copy line 91A from *Schedule A/B*................................................................................. $ 31,742.59

   **1c. Total of all property:**
   Copy line 92 from *Schedule A/B*.................................................................................... $ 31,742.59

| Part 2: | Summary of Liabilities |
| --- | --- |

2. **Schedule D: Creditors Who Have Claims Secured by Property** (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*.................................... $ 2,200,000.00

3. **Schedule E/F: Creditors Who Have Unsecured Claims** (Official Form 206E/F)

   **3a. Total claim amounts of priority unsecured claims:**
   Copy the total claims from Part 1 from line 5a of *Schedule E/F*.......................................................... $ 163,276.74

   **3b. Total amount of claims of nonpriority amount of unsecured claims:**
   Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*............................................... +$ 323,532.50

4. Total liabilities ....................................................................................................................
   Lines 2 + 3a + 3b                                                                                         $ 2,686,809.24

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com     Best Case Bankruptcy

| Fill in this information to identify the case: | |
| --- | --- |
| Debtor name | **QB Wash LLC** |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF NEW YORK |
| Case number (if known) | _____ |

☐ Check if this is an
   amended filing

## Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property                    12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest.
Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties
which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts
or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write
the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an
additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset
schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the
debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

### Part 1:      Cash and cash equivalents

**1. Does the debtor have any cash or cash equivalents?**

☐ No. Go to Part 2.
■ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | | | Current value of debtor's interest |
| --- | --- | --- | --- |
| 3. | **Checking, savings, money market, or financial brokerage accounts** *(Identify all)* | | |
| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number |
| 3.1. **Citibank** | **Checkig** | | **$22,712.59** |

| 4. | **Other cash equivalents** *(Identify all)* | |
| --- | --- | --- |
| 5. | **Total of Part 1.** | $22,712.59 |
| | Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80. | |

### Part 2:      Deposits and Prepayments

**6. Does the debtor have any deposits or prepayments?**

☐ No. Go to Part 3.
■ Yes Fill in the information below.

| 7. | **Deposits, including security deposits and utility deposits** | |
| --- | --- | --- |
| | Description, including name of holder of deposit | |
| | 7.1. **Con Edison Utility Deposit** | **$3,825.00** |

| 8. | **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent** | |
| --- | --- | --- |
| | Description, including name of holder of prepayment | |
| 9. | **Total of Part 2.** | $3,825.00 |
| | Add lines 7 through 8. Copy the total to line 81. | |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

Debtor  **QB Wash LLC**                                   Case number *(If known)*
       Name

---

**Part 3:**    **Accounts receivable**

10. **Does the debtor have any accounts receivable?**

   ☐ No.  Go to Part 4.
   ☑ Yes Fill in the information below.

11.    **Accounts receivable**

    11a. 90 days old or less:      **5,205.00**   -        **0.00**  = ....       **$5,205.00**
                            face amount             doubtful or uncollectible accounts

12.    **Total of Part 3.**                                           **$5,205.00**
    Current value on lines 11a + 11b = line 12.  Copy the total to line 82.

---

**Part 4:**    **Investments**

13. **Does the debtor own any investments?**

   ☑ No.  Go to Part 5.
   ☐ Yes Fill in the information below.

---

**Part 5:**    **Inventory, excluding agriculture assets**

18. **Does the debtor own any inventory (excluding agriculture assets)?**

   ☑ No.  Go to Part 6.
   ☐ Yes Fill in the information below.

---

**Part 6:**    **Farming and fishing-related assets (other than titled motor vehicles and land)**

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

   ☑ No.  Go to Part 7.
   ☐ Yes Fill in the information below.

---

**Part 7:**    **Office furniture, fixtures, and equipment; and collectibles**

38. **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

   ☑ No.  Go to Part 8.
   ☐ Yes Fill in the information below.

---

**Part 8:**    **Machinery, equipment, and vehicles**

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

   ☐ No.  Go to Part 9.
   ☑ Yes Fill in the information below.

| General description<br>Include year, make, model, and identification numbers<br>(i.e., VIN, HIN, or N-number) | Net book value of<br>debtor's interest<br>(Where available) | Valuation method used<br>for current value | Current value of<br>debtor's interest |
|---|---|---|---|

47.    **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles**

48.    **Watercraft, trailers, motors, and related accessories** *Examples:* Boats, trailers, motors,
    floating homes, personal watercraft, and fishing vessels

49.    **Aircraft and accessories**

---

| Debtor | **QB Wash LLC** | | Case number *(If known)* | |
| | Name | | | |

| 50. | **Other machinery, fixtures, and equipment (excluding farm machinery and equipment)** | | |
|---|---|---|---|
| | **1 log chain surface conveyor with roller** | $0.00 | $0.00 |
| | **1 soap application arch** | $0.00 | $0.00 |
| | **2 8 basket side to side mitters with brushes** | $0.00 | $0.00 |
| | **2 sets of baby rockers with brushes** | $0.00 | $0.00 |
| | **1 set of van high rockers with brushes** | $0.00 | $0.00 |
| | **1 high pressure rinsing arch** | $0.00 | $0.00 |
| | **1 triple foam application arch** | $0.00 | $0.00 |
| | **1 4 basket front to back mitter with brushes** | $0.00 | $0.00 |
| | **1 undercarriage rinsing head** | $0.00 | $0.00 |
| | **2 sets of final rinse arches** | $0.00 | $0.00 |
| | **1 overhead drying blower** | $0.00 | $0.00 |
| | **1 driver side drying blower** | $0.00 | $0.00 |
| | **1 set of power washes** | $0.00 | $0.00 |
| | **1 Micrologic POS system (Wash)** | $0.00 | $0.00 |
| | **1 Mirco Greeter's station (Wash)** | $0.00 | $0.00 |
| | **1 Sage POS system (Lube)** | $0.00 | $0.00 |
| | **3 Air Compressors** | $0.00 | $0.00 |
| | **1 Central vacumn system** | $0.00 | $0.00 |
| | **7 bucket hydrominder mixing station with pumps** | $0.00 | $0.00 |
| | **1 Micrologic electronic relay box** | $0.00 | $0.00 |
| | **5 hydraulic power packs** | $0.00 | $0.00 |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

Debtor    **QB Wash LLC**            Case number *(If known)* _____
_____
    Name

| | | |
|---|---|---|
| **1 double washer with high speed extractor** | $0.00 | $0.00 |
| **16 camera security system** | $0.00 | $0.00 |
| **2 Oil bay automobile lits** | $0.00 | $0.00 |
| **4 bulk oil storage tanks** | $0.00 | $0.00 |
| **1 bulk coolant storage tank** | $0.00 | $0.00 |
| **1 bulk washer fluid storage tank** | $0.00 | $0.00 |
| **1 bulk transmission fluid storage tank** | $0.00 | $0.00 |
| **1 waste oil storage tank** | $0.00 | $0.00 |
| **1 transmisson system vacumn and fluid exchange system** | $0.00 | $0.00 |
| **1 power steering sysytems vacumn and fluid exchange system** | $0.00 | $0.00 |
| **1 coolant system vacumn and fluid exchange system** | $0.00 | $0.00 |

51.    **Total of Part 8.**                                            $0.00
        Add lines 47 through 50.  Copy the total to line 87.

52.    **Is a depreciation schedule available for any of the property listed in Part 8?**
        ■ No
        ☐ Yes

53.    **Has any of the property listed in Part 8 been appraised by a professional within the last year?**
        ■ No
        ☐ Yes

**Part 9:**    **Real property**

54. **Does the debtor own or lease any real property?**

    ■ No.  Go to Part 10.
    ☐ Yes Fill in the information below.

**Part 10:**    **Intangibles and intellectual property**

59. **Does the debtor have any interests in intangibles or intellectual property?**

    ■ No.  Go to Part 11.
    ☐ Yes Fill in the information below.

| Debtor | **QB Wash LLC** | Case number *(If known)* |
|---|---|---|
| | Name | |

| Part 11: | All other assets |
|---|---|

70. **Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

■ No.  Go to Part 12.
☐ Yes Fill in the information below.

| Debtor | **QB Wash LLC** | Case number *(If known)* _____ |
|---|---|---|
| | Name | |

| Part 12: | Summary |
|---|---|

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $22,712.59 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $3,825.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $5,205.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $0.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $0.00 | |
| 88. **Real property.** *Copy line 56, Part 9.....................................................................>* | | $0.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $31,742.59 | + 91b. $0.00 |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $31,742.59 |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

**Fill in this information to identify the case:**

Debtor name  **QB Wash LLC**

United States Bankruptcy Court for the:  EASTERN DISTRICT OF NEW YORK

Case number (if known) _____

☐ Check if this is an
amended filing

## Official Form 206D
## Schedule D: Creditors Who Have Claims Secured by Property          12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

☑ Yes. Fill in all of the information below.

**List Creditors Who Have Secured Claims**

2. **List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | Column A<br>**Amount of claim**<br>Do not deduct the value of collateral. | Column B<br>**Value of collateral that supports this claim** |
|---|---|---|---|
| **2.1 Walsh Funding LLC**<br>Creditor's Name | Describe debtor's property that is subject to a lien | **$2,200,000.00** | **$0.00** |

**Walsh Funding LLC**
Creditor's Name

**95 Lenwood Blvd**
**Charleston, SC 29401**
Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**

☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

Describe debtor's property that is subject to a lien

**Describe the lien**

**Is the creditor an insider or related party?**
☑ No
☐ Yes

**Is anyone else liable on this claim?**
☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

3. Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.     **$2,200,000.00**

**List Others to Be Notified for a Debt Already Listed in Part 1**

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| | | |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

| Fill in this information to identify the case: |
|---|
| Debtor name **QB Wash LLC** |
| United States Bankruptcy Court for the: EASTERN DISTRICT OF NEW YORK |
| Case number (if known) |

☐ Check if this is an
amended filing

## Official Form 206E/F
# Schedule E/F: Creditors Who Have Unsecured Claims                    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and
Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and
2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

### Part 1:    List All Creditors with PRIORITY Unsecured Claims

1.  **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).

   ☐ No. Go to Part 2.

   ■ Yes. Go to line 2.

2.  **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part.** If the debtor has more than 3 creditors
    with priority unsecured claims, fill out and attach the Additional Page of Part 1.

| | | Total claim | Priority amount |
|---|---|---|---|
| 2.1 | Priority creditor's name and mailing address | **$163,276.74** | **$163,276.74** |

| 2.1 | Priority creditor's name and mailing address<br>**New York State Dept of<br>Taxation and Finance<br>Harrison Campus<br>Albany, NY 12227** | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed |
|---|---|---|
| | Date or dates debt was incurred | Basis for the claim: |
| | Last 4 digits of account number | Is the claim subject to offset?<br>■ No<br>☐ Yes |
| | Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (8) | |

### Part 2:    List All Creditors with NONPRIORITY Unsecured Claims
3.  **List in alphabetical order all of the creditors with nonpriority unsecured claims.** If the debtor has more than 6 creditors with nonpriority unsecured claims, fill
    out and attach the Additional Page of Part 2.

| | | Amount of claim |
|---|---|---|
| | | **$250,000.00** |

| 3.1 | Nonpriority creditor's name and mailing address<br>**138-77 Queens Blvd LLC<br>c/o Corporation Service<br>Company<br>Albany, NY 12207** | As of the petition filing date, the claim is: *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed |
|---|---|---|
| | **Date(s) debt was incurred** _ | Basis for the claim: _ |
| | **Last 4 digits of account number** _ | Is the claim subject to offset? ■ No  ☐ Yes |

| 3.2 | Nonpriority creditor's name and mailing address<br>**Frank Millman<br>Distributions, Inc<br>8 Progress Street<br>Edison, NJ 08820** | As of the petition filing date, the claim is: *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **$14,747.00** |
|---|---|---|---|
| | **Date(s) debt was incurred** _ | Basis for the claim: _ | |
| | **Last 4 digits of account number** _ | Is the claim subject to offset? ■ No  ☐ Yes | |

| Debtor | **QB Wash LLC** | | Case number (if known) | |
|---|---|---|---|---|
| | Name | | | |

| 3.3 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $985.17 |
|---|---|---|---|

**Kleen Rite Corp**
**257 South Ninth Street**
**Columbia, PA 17512**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.4 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $28,280.00 |
|---|---|---|---|

**New York City Dept of**
**Water**
**59-17 Industrial Blvd**
**Elmhurst, NY 11373**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.5 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $7,094.00 |
|---|---|---|---|

**Prefect Car Corporation**
**270 Walton Avenue**
**Bronx, NY 10451**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.6 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $1,747.00 |
|---|---|---|---|

**Reladyne Incorporated**
**8280 Montgomery Road**
**Suite 101**
**Cincinnati, OH 45236**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.7 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $20,000.00 |
|---|---|---|---|

**T & E Sales of Marlboro I**
**913 Middlesex Avenue**
**Metuchen, NJ 08840**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.8 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $679.33 |
|---|---|---|---|

**Uline**
**12575 Uline Drive**
**Pleasant Prairie, WI 53158**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: **679.33**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

**Part 3:   List Others to Be Notified About Unsecured Claims**

4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

   If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|

**Part 4:   Total Amounts of the Priority and Nonpriority Unsecured Claims**

5. Add the amounts of priority and nonpriority unsecured claims.

| | Total of claim amounts |
|---|---|

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

Debtor      **QB Wash LLC**
_____
                    Name

Case number (if known) _____

| | | |
|---|---|---|
| **5a. Total claims from Part 1** | 5a. | $                                   163,276.74 |
| **5b. Total claims from Part 2** | 5b. + | $                                   323,532.50 |
| **5c. Total of Parts 1 and 2**<br>     Lines 5a + 5b = 5c. | 5c. | $                                 486,809.24 |

<table>
<tr><td colspan="2" style="background:black;color:white"><strong>Fill in this information to identify the case:</strong></td></tr>
<tr><td>Debtor name</td><td><strong>QB Wash LLC</strong></td></tr>
<tr><td>United States Bankruptcy Court for the:</td><td>EASTERN DISTRICT OF NEW YORK</td></tr>
<tr><td>Case number (if known)</td><td></td></tr>
</table>

☐ Check if this is an amended filing

## Official Form 206G

## Schedule G: Executory Contracts and Unexpired Leases                    12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.

1.   **Does the debtor have any executory contracts or unexpired leases?**
☐ No. Check this box and file this form with the debtor's other schedules.  There is nothing else to report on this form.
■ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal      Property* (Official Form 206A/B).

| **2. List all contracts and unexpired leases** | | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|---|
| 2.1. | State what the contract or lease is for and the nature of the debtor's interest | **Lease  of Car Wash lease expires May 31, 2035** | |
| | State the term remaining | | **138-77 Queens Blvd LLC c/o Corporation Service c 80 State Street Albany, NY 12207** |
| | List the contract number of any government contract | | |

**Fill in this information to identify the case:**

Debtor name     **QB Wash LLC**

United States Bankruptcy Court for the:     EASTERN DISTRICT OF NEW YORK

Case number (if known) _____

☐ Check if this is an
   amended filing

## Official Form 206H
## Schedule H: Your Codebtors

12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

**1. Do you have any codebtors?**

☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

■ Yes

**2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, Schedules D-G.** Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|
| **Name** | **Mailing Address** | **Name** | *Check all schedules that apply:* |
| 2.1 **Zachary Silver** | **138-77 Queens Boulevard Jamaica, NY 11435** | **138-77 Queens Blvd LLC** | ☐ D _____<br>■ E/F ___3.1___<br>☐ G _____ |

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case:</strong></td></tr>
<tr><td>Debtor name</td><td><strong>QB Wash LLC</strong></td></tr>
<tr><td>United States Bankruptcy Court for the:</td><td>EASTERN DISTRICT OF NEW YORK</td></tr>
<tr><td>Case number (if known)</td><td></td></tr>
</table>

☐ Check if this is an amended filing

## Official Form 207

# Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy      04/19

**The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).**

---

**Part 1:      Income**

1. **Gross revenue from business**

   ☐ None.

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
|---|---|---|
| From the beginning of the fiscal year to filing date:<br>From **1/01/2021** to **Filing Date** | ■ Operating a business<br>☐ Other _____ | **$121,408.00** |

2. **Non-business revenue**
   Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

   ■ None.

| | Description of sources of revenue | Gross revenue from each source<br>(before deductions and exclusions) |
|---|---|---|

---

**Part 2:     List Certain Transfers Made Before Filing for Bankruptcy**

3. **Certain payments or transfers to creditors within 90 days before filing this case**
   List payments or transfers--including expense reimbursements--to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

   ☐ None.

| | Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>Check all that apply |
|---|---|---|---|---|
| 3.1. | **Frank Millman<br>Distributions, Inc<br>8 Progress Street<br>Edison, NJ 08820** | | **$17,160.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |

---

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

| Debtor | QB Wash LLC | Case number *(if known)* |
|---|---|---|

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|
| 3.2. **New York State Insurance Fund**<br>**PO Box 66699**<br>**Albany, NY 12206** | | $22,394.12 | ■ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>■ Other **Insurance** |
| 3.3. **Cermele & Wood LLP**<br>**2 WestchesterPark Drive**<br>**#110**<br>**West Harrison, NY 10604** | | $27,185.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.4. **Con Edison**<br>**120 West End Avenue**<br>**New York, NY 10023** | | $10,327.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.5. **Freedom Coverage**<br>**Anwins Burlington Insurance Co** | | $9,268.33 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>■ Other **Insurance** |

4. **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**
   List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

   ☐ None.

| Insider's name and address<br>Relationship to debtor | Dates | Total amount of value | Reasons for payment or transfer |
|---|---|---|---|
| 4.1. **Insider's Name and Address** | | $0.00 | |

5. **Repossessions, foreclosures, and returns**
   List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

   ■ None

| Creditor's name and address | Describe of the Property | Date | Value of property |
|---|---|---|---|

6. **Setoffs**
   List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com     Best Case Bankruptcy

| Debtor | QB Wash LLC | | Case number *(if known)* | |
|--------|-------------|--|--------------------------|--|

■ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|-----------------------------|-----------------------------------------|-----------------------|--------|

---

**Part 3:   Legal Actions or Assignments**

**7.   Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**
List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

☐ None.

| | Case title / Case number | Nature of case | Court or agency's name and address | Status of case |
|--|--------------------------|----------------|-------------------------------------|----------------|
| 7.1. | Luis Coj-Carillo v Blvd Wash & Lube LTD, LB One LLC.et al. 714151/2020 | Civil | Supreme Court of the State of New York County of Queens | ■ Pending ☐ On appeal ☐ Concluded |
| 7.2. | | | | ☐ Pending ☐ On appeal ☐ Concluded |
| 7.3. | Phillip Morales | Date of Accident 2/9/20 Attorney Dennis Smith, PLLC did 10/1/20 re their representation Phiilip Morales injuries he sustained in an Car Wash  Lube 138-77 Queens Blv, Jamaica, NY 11435 on 2/9/20 no formal litigation | | ☐ Pending ☐ On appeal ☐ Concluded |

**8.   Assignments and receivership**
List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

■ None

---

**Part 4:   Certain Gifts and Charitable Contributions**

9.   **List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

■ None

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|------------------------------|-------------------------------------------|-------------|-------|

---

**Part 5:   Certain Losses**

10. **All losses from fire, theft, or other casualty within 1 year before filing this case.**

■ None

---

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

| Debtor | QB Wash LLC | Case number *(if known)* | |
|---|---|---|---|

| Description of the property lost and how the loss occurred | Amount of payments received for the loss<br><br>If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.<br><br>List unpaid claims on Official Form 106A/B *(Schedule A/B: Assets – Real and Personal Property).* | Dates of loss | Value of property lost |
|---|---|---|---|

## Part 6:    Certain Payments or Transfers

**11. Payments related to bankruptcy**
List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☐ None.

| | Who was paid or who received the transfer?<br>Address | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|---|
| 11.1. | **Law Office of Gregory Messer<br>26 Court Street<br>Suite 2400<br>Brooklyn, NY 11242** | **Attorney Fees** | **2/5/21** | **$5,000.00** |
| | Email or website address | | | |
| | Who made the payment, if not debtor? | | | |

**12. Self-settled trusts of which the debtor is a beneficiary**
List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

■ None.

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|

**13. Transfers not already listed on this statement**
List any transfers of money or other property by sale, trade, or any other means made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

■ None.

| Who received transfer?<br>Address | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|

## Part 7:    Previous Locations

**14. Previous addresses**
List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

■ Does not apply

| Address | Dates of occupancy<br>From-To |
|---|---|

## Part 8:    Health Care Bankruptcies

**15. Health Care bankruptcies**
Is the debtor primarily engaged in offering services and facilities for:

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

Debtor    **QB Wash LLC**                                          Case number *(if known)*

- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

■ No. Go to Part 9.
☐ Yes. Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
| --- | --- | --- |

| Part 9: | Personally Identifiable Information |
| --- | --- |

16. **Does the debtor collect and retain personally identifiable information of customers?**

■ No.
☐ Yes. State the nature of the information collected and retained.

17. **Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

■ No. Go to Part 10.
☐ Yes. Does the debtor serve as plan administrator?

| Part 10: | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |
| --- | --- |

18. **Closed financial accounts**
Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

■ None

| Financial Institution name and Address | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
| --- | --- | --- | --- | --- |

19. **Safe deposit boxes**
List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

■ None

| Depository institution name and address | Names of anyone with access to it Address | Description of the contents | Do you still have it? |
| --- | --- | --- | --- |

20. **Off-premises storage**
List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

■ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Do you still have it? |
| --- | --- | --- | --- |

| Part 11: | Property the Debtor Holds or Controls That the Debtor Does Not Own |
| --- | --- |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

| Debtor | QB Wash LLC | Case number *(if known)* | |
|---|---|---|---|

21. **Property held for another**
List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

■ None

---

**Part 12:** Details About Environment Information

For the purpose of Part 12, the following definitions apply:
*Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

*Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

*Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

22. **Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

   ■ No.
   ☐ Yes. Provide details below.

| Case title<br>Case number | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|

23. **Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

   ■ No.
   ☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|

24. **Has the debtor notified any governmental unit of any release of hazardous material?**

   ■ No.
   ☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|

---

**Part 13:** Details About the Debtor's Business or Connections to Any Business

25. **Other businesses in which the debtor has or has had an interest**
List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

   ■ None

| Business name address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|

26. **Books, records, and financial statements**
   26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.
   ☐ None

| Name and address | Date of service<br>From-To |
|---|---|

Debtor   **QB Wash LLC**                                        Case number *(if known)*

| Name and address | Date of service From-To |
|---|---|
| 26a.1.   **Arman Choudhury, CPA PC**<br>**30 Princeton Drive**<br>**Syosset, NY 11791** | |

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

■ None

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

■ None

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

■ None

| Name and address |
|---|

27. **Inventories**
Have any inventories of the debtor's property been taken within 2 years before filing this case?

■ No
☐ Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|

28. **List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Zachary Silver** | **138-77 Queens Blvd Jamaica, NY 11435** | **Sole Member** | |

29. **Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

■ No
☐ Yes. Identify below.

30. **Payments, distributions, or withdrawals credited or given to insiders**
Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

■ No
☐ Yes. Identify below.

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|

31. **Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

Official Form 207                Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy             page 7

| Debtor | **QB Wash LLC** | Case number *(if known)* | |
|---|---|---|---|

■ No
☐ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|

32. **Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

■ No
☐ Yes. Identify below.

| Name of the pension fund | Employer Identification number of the parent corporation |
|---|---|

### Part 14:  Signature and Declaration

   **WARNING** -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.
   18 U.S.C. §§ 152, 1341, 1519, and 3571.

   I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

   I declare under penalty of perjury that the foregoing is true and correct.

Executed on      **February  8, 2021**

/s/ Zachary Sliver
Signature of individual signing on behalf of the debtor

**Zachary Sliver**
Printed name

Position or relationship to debtor

**Are additional pages to** *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?
■ No
☐ Yes

B2030 (Form 2030) (12/15)

# United States Bankruptcy Court
### Eastern District of New York

In re **QB Wash LLC**

Debtor(s)

Case No.

Chapter **7**

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1. Pursuant to 11 U .S.C. § 329(a) and Fed. Bankr. P. 2016(b), I certify that I am the attorney for the above named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

| | | |
|---|---|---|
| For legal services, I have agreed to accept | $ | **5,000.00** |
| Prior to the filing of this statement I have received | $ | **5,000.00** |
| Balance Due | $ | **0.00** |

2. The source of the compensation paid to me was:

   ■ Debtor  ☐ Other (specify):

3. The source of compensation to be paid to me is:

   ■ Debtor  ☐ Other (specify):

4. ■ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

   ☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

5. In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

   a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
   b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
   c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
   d. [Other provisions as needed]

6. By agreement with the debtor(s), the above-disclosed fee does not include the following service:

---

### CERTIFICATION

I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

**February 8, 2021**
*Date*

/s/ **Gregory M. Messer**
**Gregory M. Messer 7539**
*Signature of Attorney*
**Law Office of Gregory Messer**
**26 Court Street**
**Suite 2400**
**Brooklyn, NY 11242**
**718 858-1474  Fax: 718 797-5360**
**gmesser@messer-law.com**
*Name of law firm*

---

# United States Bankruptcy Court
## Eastern District of New York

In re    __QB Wash LLC__                       Case No. _____

                                      Debtor(s)         Chapter    __7__ _____

# VERIFICATION OF CREDITOR MATRIX

       The above named debtor(s) or attorney for the debtor(s) hereby verify that the attached matrix (list of creditors) is true and correct to the best of their knowledge.

Date:    __February  8, 2021__            **/s/ Zachary Sliver**

                                          **Zachary Sliver/**

                                          Signer/Title

Date:    __February  8, 2021__            **/s/ Gregory M. Messer**

                                          Signature of Attorney

                                          **Gregory M. Messer 7539**

                                          **Law Office of Gregory Messer**

                                          **26 Court Street**

                                          **Suite 2400**

                                          **Brooklyn, NY 11242**

                                          **718 858-1474  Fax: 718 797-5360**

138-77 Queens Blvd LLC
c/o Corporation Service
Company
Albany, NY 12207


138-77 Queens Blvd LLC
c/o Corporation Service c
80 State Street
Albany, NY 12207


Frank Millman
Distributions, Inc
8 Progress Street
Edison, NJ 08820


Kleen Rite Corp
257 South Ninth Street
Columbia, PA 17512


New York City Dept of
Water
59-17 Industrial Blvd
Elmhurst, NY 11373


New York State Dept of
Taxation and Finance
 Harrison Campus
Albany, NY 12227


Prefect Car Corporation
270 Walton Avenue
Bronx, NY 10451


Reladyne Incorporated
8280 Montgomery Road
Suite 101
Cincinnati, OH 45236


T & E Sales of Marlboro I
913 Middlesex Avenue
Metuchen, NJ 08840


Uline
12575 Uline Drive
Pleasant Prairie, WI 53158

Walsh Funding LLC
95 Lenwood Blvd
Charleston, SC 29401


Zachary Silver
138-77 Queens Boulevard
Jamaica, NY 11435

# United States Bankruptcy Court
## Eastern District of New York

In re   __QB Wash LLC__                      Case No. _____

                          Debtor(s)               Chapter    __7__

## CORPORATE OWNERSHIP STATEMENT (RULE 7007.1)

Pursuant to Federal Rule of Bankruptcy Procedure 7007.1 and to enable the Judges to evaluate possible disqualification or recusal, the undersigned counsel for __QB Wash LLC__ in the above captioned action, certifies that the following is a (are) corporation(s), other than the debtor or a governmental unit, that directly or indirectly own(s) 10% or more of any class of the corporation's(s') equity interests, or states that there are no entities to report under FRBP 7007.1:

■ None [*Check if applicable*]

__February  8, 2021__
Date

/s/ Gregory M. Messer

**Gregory M. Messer 7539**
Signature of Attorney or Litigant
Counsel for __QB Wash LLC__
**Law Office of Gregory Messer**
**26 Court Street**
**Suite 2400**
**Brooklyn, NY 11242**
**718 858-1474 Fax:718 797-5360**
**gmesser@messer-law.com**

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NEW YORK

## STATEMENT PURSUANT TO LOCAL
## BANKRUPTCY RULE 1073-2(b)

**DEBTOR(S):**  QB Wash LLC _____   **CASE NO.:** _____

Pursuant to Local Bankruptcy Rule 1073-2(b), the debtor *(or any other petitioner)* hereby makes the following disclosure concerning Related Cases, to the petitioner's best knowledge, information and belief:

[NOTE: Cases shall be deemed "Related Cases" for purposes of E.D.N.Y. LBR 1073-1 and E.D.N.Y. LBR 1073-2 if the earlier case was pending at any time within eight years before the filing of the new petition, and the debtors in such cases: (i) are the same; (ii) are spouses or ex-spouses; (iii) are affiliates, as defined in 11 U.S.C. § 101(2); (iv) are general partners in the same partnership; (v) are a partnership and one or more of its general partners; (vi) are partnerships which share one or more common general partners; or (vii) have, or within 180 days of the commencement of either of the Related Cases had, an interest in property that was or is included in the property of another estate under 11 U.S.C. § 541(a).]

■ NO RELATED CASE IS PENDING OR HAS BEEN PENDING AT ANY TIME.

☐ THE FOLLOWING RELATED CASE(S) IS PENDING OR HAS BEEN PENDING:

1. CASE NO.:_____ JUDGE:_____ DISTRICT/DIVISION:_____

CASE STILL PENDING (Y/N):_____          [*If closed*] Date of closing:_____

CURRENT STATUS OF RELATED CASE: _____
                                            (Discharged/awaiting discharge, confirmed, dismissed, etc.)

MANNER IN WHICH CASES ARE RELATED (*Refer to NOTE above*): _____

REAL PROPERTY LISTED IN DEBTOR'S SCHEDULE "A" ("REAL PROPERTY") WHICH WAS ALSO LISTED IN SCHEDULE "A" OF RELATED CASE: _____

2. CASE NO.:_____ JUDGE:_____ DISTRICT/DIVISION:_____

CASE STILL PENDING (Y/N):_____          [*If closed*] Date of closing:_____

CURRENT STATUS OF RELATED CASE: _____
                                            (Discharged/awaiting discharge, confirmed, dismissed, etc.)

MANNER IN WHICH CASES ARE RELATED (*Refer to NOTE above*): _____

REAL PROPERTY LISTED IN DEBTOR'S SCHEDULE "A" ("REAL PROPERTY") WHICH WAS ALSO LISTED IN SCHEDULE "A" OF RELATED CASE: _____

3. CASE NO.:_____ JUDGE:_____ DISTRICT/DIVISION:_____

CASE STILL PENDING (Y/N):_____          [*If closed*] Date of closing:_____

(OVER)

DISCLOSURE OF RELATED CASES (cont'd)

CURRENT STATUS OF RELATED CASE: _____

(Discharged/awaiting discharge, confirmed, dismissed, etc.)

MANNER IN WHICH CASES ARE RELATED *(Refer to NOTE above)*: _____

REAL PROPERTY LISTED IN DEBTOR'S SCHEDULE "A" ("REAL PROPERTY") WHICH WAS ALSO LISTED IN
SCHEDULE "A" OF RELATED CASE: _____

*NOTE:* Pursuant to 11 U.S.C. § 109(g), certain individuals who have had prior cases dismissed within the preceding 180 days may not
be eligible to be debtors.  Such an individual will be required to file a statement in support of his/her eligibility to file.

TO BE COMPLETED BY DEBTOR/PETITIONER'S ATTORNEY, AS APPLICABLE:

I am admitted to practice in the Eastern District of New York (Y/N): __Y__

CERTIFICATION (to be signed by pro se debtor/petitioner or debtor/petitioner's attorney, as applicable):

I certify under penalty of perjury that the within bankruptcy case is not related to any case now pending or pending at any time, except
as indicated elsewhere on this form.

**/s/ Gregory M. Messer**
_____
**Gregory M. Messer 7539**
Signature of Debtor's Attorney
**Law Office of Gregory Messer**
**26 Court Street**
**Suite 2400**
**Brooklyn, NY 11242**
**718 858-1474 Fax:718 797-5360**

_____
Signature of Pro Se Debtor/Petitioner

_____
Signature of Pro Se Joint Debtor/Petitioner

_____
Mailing Address of Debtor/Petitioner

_____
City, State, Zip Code

_____
Area Code and Telephone Number

Failure to fully and truthfully provide all information required by the E.D.N.Y. LBR 1073-2 Statement may subject the debtor or any
other petitioner and their attorney to appropriate sanctions, including without limitation conversion, the appointment of a trustee or the
dismissal of the case with prejudice.

NOTE: Any change in address must be reported to the Court immediately IN WRITING.  Dismissal of your petition may otherwise
result.

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                                   Best Case Bankruptcy

EXHIBIT B

## QB Wash LLC -- Revised Schedule of Creditors as of June 14, 2020

| Creditor | Claim Type | Amount | Notes | % |
|---|---|---|---|---|
| NYS Dep't of Taxation and Finance | Priority | $163,277 | | |
| | Unsecured | | | |
| NYS Dep't of Labor | Priority | $5,240 | Per Proof of Claim 1-1, filed 2/12/21 | |
| | Unsecured | | | |
| Wash Funding LLC | Unsecured | $2,200,000 | Putative lien avoided by Stipulation and Order dated 6/2/21 (Doc. 40) | 78.2% of total |
| 138-77 Queens Blvd LLC | Unsecured | $370,535 | Corrected, per accompanying Exhibit F | 60.4% of all claims (excluding Wash Funding LLC) |
| Frank Millman Distributions, Inc. | Unsecured | $14,747 | | |
| Kleen Rite Corp. | Unsecured | $985 | | |
| New York City Dept of Water [sic] | Unsecured | $0 | Constitutes a lien on the Business Premises; paid in part and balance under negotiation by Landlord | |
| Prefect [sic] Car Corp. | Unsecured | $7,094 | | |
| Reladyne Inc. | Unsecured | $1,747 | | |
| T&E Sales of Marlboro | Unsecured | $20,000 | | |
| Uline | Unsecured | $679 | | |
| Scratch/Cross River Bank | Unsecured | $28,891 | Per Proof of Claim 2-1, filed 3/9/21 | |
| Total | | $2,813,195 | | |

EXHIBIT C

1   UNITED STATES BANKRUPTCY COURT

2   EASTERN DISTRICT OF NEW YORK

3   Case No. 21-40301-ESS

4   - - - - - - - - - - - - - - - - - - - - - -x

5   In the Matter of:

6

7   QB WASH, LLC,

8

9            Debtor.

10

11  - - - - - - - - - - - - - - - - - - - - - -x

12                United States Bankruptcy Court

13                271-C Cadman Plaza East

14                Brooklyn, NY 11201

15

16                March 12, 2021

17

18  341 Meeting of Creditors

19

20

21

22

23  B E F O R E:

24  DAVID DOYAGA

25  TRUSTEE

```
 1    A P P E A R A N C E S :

 2

 3    UNITED STATES DEPARTMENT OF JUSTICE

 4         Attorney for the U.S. Trustee

 5         201 Varick Street

 6         New York, New York 10014

 7

 8    BY:  DAVID DOYAGA (TELEPHONICALLY)

 9

10    THE LAW OFFICE OF GREGORY MESSER, PLLC

11         Attorneys for Debtor

12         26 Court Street

13         Brooklyn, NY 11242

14

15    BY:  GREGORY MESSER (TELEPHONICALLY)

16

17    MCDERMOTT WILL & EMERY

18         Attorneys for Zach Silver

19         340 Madison Avenue

20         New York, NY 10173

21

22    BY:  TIM WALSH (TELEPHONICALLY)

23

24

25
```

```
                                              Page 3
 1    LAW OFFICES OF AVRUM J. ROSEN, PLLC

 2         Attorneys for Trustee

 3         38 New Street

 4         Huntington, NY 11743

 5

 6    BY:  AVRUM ROSEN (TELEPHONICALLY)

 7

 8    ROSENBERG & ESTIS, P.C.

 9         Attorneys for 13877 Queens Boulevard, LLC, Creditor

10         733 Third Avenue

11         New York, NY 10017

12

13    JOHN GIAMPOLO (TELEPHONICALLY)

14

15    ALSO APPEARING TELEPHONICALLY:

16         ZACH SILVER, Principal of QB Wash, LLC

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde
```

```
 1                    P R O C E E D I N G S
 2            MR. DOYAGA:  Oh, okay.  Maybe we're okay.  Now
 3    calling the case -- all right, everybody.  Let's just check
 4    here.  Doing track 30, it's QB Wash, LLC, 121-40301.  For
 5    the record, the Debtor is on the phone with -- it should be
 6    Debtor's principal is on the phone with counsel.  There is
 7    also -- Mr. Walsh, identify yourself.
 8            MR. WALSH:  Tim Walsh from McDermott Will & Emery
 9    on behalf of Mr. Silver in his individual capacity.
10            MR. DOYAGA:  And, Mr. Rosen, state your
11    appearance.
12            MR. ROSEN:  Dave Rosen, Law Offices of Avrum J.
13    Rosen, counsel to the trustee.
14            MR. DOYAGA:  Now, Gregory, state your formal
15    appearance, please.
16            MR. MESSER:  Gregory Messer for the Debtor, QB
17    Wash, LLC.
18            MR. DOYAGA:  All right.  And would the principal
19    of the Debtor who is appearing on the phone state your full
20    name?
21            MR. SILVER:  Zachary Silver.
22            MR. DOYAGA:  Thank you.  And what is your
23    relationship to QB Wash?
24            MR. SILVER:  Principal.
25            MR. DOYAGA:  And are you the sole owner, sole
```

1    shareholder?

2              MR. SILVER:  Yes.

3              MR. DOYAGA:  Thank you.

4              MR. MESSER:  It's actually an LLC, so he's

5    actually the sole member.

6              MR. DOYAGA:  Thank you.  Thank you, Mr. Messer.

7    And we had a turnover of a bank account balance, check,

8    approximate amount.  But I don't know if you discussed this

9    with the principal of the Debtor.  The balance on the

10   schedules was much larger.  Can you explain that, Zachary,

11   Zach?

12             MR. SILVER:  My explanation (indiscernible) is two

13   things.  On the day that I filed, I ran a payroll for the

14   employees, as I thought it was improper and immoral to not

15   pay them.  It was my judgement at the time.  That was a

16   significant part of the balance.  As well as the fact that

17   certain utility bills were on autopay.  So even after the

18   bankruptcy, I believe there was a National Grid charge and a

19   ConEdison charge and things of this nature.  Now, I sent

20   over the bank statements to Mr. Messer, and it will clearly

21   show exactly what happened.

22             MR. DOYAGA:  Yeah.  I think should have asked, are

23   there any creditors represented on the phone in this case?

24             MR. GIAMPOLO:  Yes.  John Giampolo, Rosenberg &

25   Estis, on behalf of 13877 Queens Boulevard, LLC.

1          MR. DOYAGA:  Okay.  Any other creditors?  And do

2     the creditors wish to elect a trustee different than David

3     Doyaga?  All right, hearing none, David Doyaga is the

4     trustee.

5          All right, Mr. Rosen, would you like to please

6     proceed?

7          MR. ROSEN:  Sure.  Thank you, David.  Good

8     afternoon.  My name is Avrum Rosen.  I am counsel to the

9     Debtor.

10         MR. DOYAGA:  No, no.  To the trustee.

11         MR. ROSEN:  Trustee, sorry.  It's been a long day.

12    I wear many hats.

13         David, do you want to go through your usual stuff

14    and then I'll do it when I'm --

15         MR. DOYAGA:  Well, to be very frank, given the

16    circumstances, we've done a lot of work behind the scenes.

17         MR. ROSEN:  Yeah, okay.

18         MR. DOYAGA:  I just assume you -- ask your

19    questions.

20         MR. ROSEN:  Okay, thank you.

21         Sir, I did receive your bank statements, and I

22    have a couple of just initial questions on them.  First, I

23    have a request of you.  You sent me over the bank statements

24    for approximately two years, and I appreciate that.  But the

25    Citibank statements that you sent do not have copies of the

1    checks attached, check numbers.  I know on Citibank, because

2    I use them, that if you contact them, they will give you all

3    of the checks at no cost going back at least a year.  So I'm

4    going to ask that you make that request of Citibank and get

5    copies of the checks going back as far back as you can

6    without us having to lose weeks doing it, 2004.  If you make

7    the request, you'll get at least a year's worth.  Okay?

8                MR. SILVER:  I can do that.

9                MR. ROSEN:  Okay.  Thank you.  That's my first

10   request.  I have another question for you also.  I see that

11   there are a lot of deposits made up in Mount Kisco.  Do you

12   live in Mount Kisco?

13               MR. SILVER:  Presently, yes.

14               MR. ROSEN:  Okay.  Well, over like the last year

15   or so have you lived in Mount Kisco?

16               MR. SILVER:  Since March of last year.

17               MR. ROSEN:  Since March.  Do you live in 38 Taylor

18   Road in Mount Kisco?

19               MR. SILVER:  Presently, yes.

20               MR. ROSEN:  Okay.  Can you explain for me who --

21   well, withdrawn.  There is a secured creditor on your

22   business, correct?

23               MR. SILVER:  As I understand.

24               MR. ROSEN:  Okay.  And who is that secured

25   creditor?

Page 8

1            MR. SILVER:  Wash Funding, LLC.

2            MR. ROSEN:  And are the principals of that family

3    members of yours?

4            MR. SILVER:  I believe the principals are trusts.

5            MR. ROSEN:  Okay.  Now, are the trusts related to

6    family members of yours?

7            MR. SILVER:  Yes.

8            MR. ROSEN:  And is this the same trusts that were

9    -- withdrawn.  And when did the security interest come into

10   place, do you know?

11           MR. SILVER:  No.  I believe the security interest

12   went into place -- I don't know, I'm sorry.

13           MR. ROSEN:  Was it last year?

14           MR. SILVER:  Again, if I gave an answer, I would

15   be making it up.  I don't know the exact intricacies of when

16   the security interest went into place off the top of my

17   head.

18           MR. ROSEN:  Okay.  When was the last time that

19   lender advanced any money to the business?

20           MR. SILVER:  I don't know.

21           MR. ROSEN:  Was it last year?

22           MR. SILVER:  Possibly.

23           MR. ROSEN:  And who -- if those funds came in, who

24   would they have come in from?

25           MR. SILVER:  I'm not sure.

1           MR. ROSEN:  Do you remember receiving any checks -

2    - did you receive any checks or wires directly from family

3    members?

4           MR. SILVER:  I don't -- not that I recall,

5    although that is a possibility.

6           MR. DOYAGA:  Whoever that was, please put your

7    phone on mute.

8           MR. ROSEN:  Over the past year, did you make any

9    payments to the secured lender?

10          MR. SILVER:  Yes.

11          MR. ROSEN:  And do you recall approximately how

12   much you paid them?

13          MR. SILVER:  Very approximately, $30,000 over the

14   year.

15          MR. ROSEN:  And again, I don't have copies of the

16   checks.  But when you paid them, did you pay them by check?

17          MR. SILVER:  I did pay them by check.

18          MR. ROSEN:  And were those regular payments?  Was

19   it like the same amount every month, or did they vary?

20          MR. SILVER:  Yes, they were the same amount every

21   month.

22          MR. ROSEN:  Do you recall what amount that was?

23          MR. SILVER:  It was in the $3,000 (indiscernible).

24          MR. ROSEN:  In the $3,000 range?  Okay.  Thank

25   you.  Also going to the checking account, there were a

1    number of checks to an entity called Baar, B-a-a-r, LLC.  Do

2    you know who that is?

3              MR. SILVER:  Yes.

4              MR. ROSEN:  And who is it?

5              MR. SILVER:  It's an appraisal firm.

6              MR. ROSEN:  And were those payments -- well, let

7    me rephrase it.  And why were you paying an appraisal firm?

8              MR. SILVER:  I was paying an appraisal firm

9    because there was a rent reset provision within my lease and

10   I had to elect an appraiser and use his services in order to

11   go through the rent reset process to try to secure a lease

12   for -- to go through that process for the company.

13             MR. ROSEN:  Okay, thank you.  And is that also the

14   reason -- did you have to get a new survey as part of that

15   process also?

16             MR. SILVER:  No.

17             MR. ROSEN:  Okay.  Because there was an $1,100

18   payment to a land surveying company.  Do you know what that

19   was for?

20             MR. SILVER:  That was for -- that was -- that

21   charge, to be forthright, was unrelated to the business with

22   QB Wash.

23             MR. ROSEN:  Okay.  Is that related to when you

24   were acquiring the residence in Mount Kisco?

25             MR. SILVER:  No.

1          MR. ROSEN:  Okay.  But it was unrelated.  Okay,

2     thank you.  In terms of money that came in, who is Scott

3     Silver?

4          MR. SILVER:  My father.

5          MR. ROSEN:  And did your father lend you money to

6     the business within the last year?

7          MR. SILVER:  I'm not incredibly familiar with the

8     organization chart of my family's accounts and finances.  So

9     when money came in, and because I needed money to avoid

10    filing for bankruptcy sooner than I actually have, I'm not

11    sure if the money came from -- what entity or what account

12    the money came from.

13         MR. ROSEN:  Okay.

14         MR. SILVER:  I just don't know the interworkings

15    there.

16         MR. ROSEN:  Okay.  Going back to Mount Kisco.  So

17    there were a number of deposits.  Obviously the car wash

18    we're looking to see what happened to cash deposits.  I do

19    see a number of small deposits being made up in Mount Kisco,

20    I think at an ATM.  What was your -- how did you make --

21    first of all, was there cash generated from the business,

22    and if so, how did you deposit it, and was it all deposited?

23         MR. SILVER:  Cash was generated from the business.

24    Cash was rarely deposited.  It was generally used to pay

25    employees or vendors.

1          MR. ROSEN:  Okay.  Approximately what percentage

2     of the business was in cash?

3          MR. SILVER:  It's a very hard thing to

4     approximate, but I would say, again, very, very difficult to

5     approximate.  Twenty percent to 25 percent.

6          MR. ROSEN:  Okay.  Did you keep any books and

7     records of these cash transactions?

8          MR. SILVER:  No.

9          MR. ROSEN:  Now, prior to entering into --

10    withdrawn.  Were there any other financing either sought or

11    contemplated for the business within the last two years?

12         MR. SILVER:  Only a PPP loan I received.

13         MR. ROSEN:  Okay.  And when did you receive a PPP

14    loan?

15         MR. SILVER:  I believe in April or May, I believe.

16         MR. ROSEN:  And I don't recall, were they listed

17    as a creditor on your petition?

18         MR. SILVER:  They were not formally listed as a

19    creditor on my petition because I had already submitted the

20    loan for forgiveness.

21         MR. ROSEN:  And has it been -- has it been totally

22    forgiven?

23         MR. SILVER:  I haven't checked up on it lately,

24    but (indiscernible) it's being forgiven.

25         MR. ROSEN:  Now, you were also -- you were in

1    litigation with the landlord, correct?

2          MR. SILVER:  Correct.

3          MR. ROSEN:  And you retained a firm in White

4    Plains to represent you?

5          MR. SILVER:  Correct.

6          MR. ROSEN:  At any point during your

7    (indiscernible), did you have discussions with them about

8    what's called a Yellowstone injunction?

9          MR. SILVER:  I don't recall the exact

10   conversations I had with my attorney.

11         MR. ROSEN:  Well, did you ever have a conversation

12   about trying to get any sort of stay or injunction at the

13   beginning of the case?

14         MR. SILVER:  Again, I just don't remember the

15   exact conversations I had with my attorney.

16         MR. ROSEN:  Okay.  And when you had communications

17   with them, were they in writing or were they by email or all

18   on the phone?  Which were they?  Or any combination thereof?

19         MR. SILVER:  Any combination thereof.

20         MR. ROSEN:  Okay.  I'm going to ask you to turn

21   over your communications with counsel over the litigation.

22         MR. MESSER:  Mr. Rosen, we'll take that request

23   under advisement.  I know it's a corporate case and the

24   privilege is waived, but I just want to think about the

25   privilege issue a little bit.  I anticipate that we'll turn

1    it over, but I just want to ponder it a little bit.

2           MR. ROSEN:  Mr. Messer, I would never get in the

3    way of your pondering anything.

4           MR. MESSER:  Thank you.

5           MR. ROSEN:  In terms of the business, in the last

6    six years -- well, you started this business in, what, 2015

7    if I recall correctly, correct?

8           MR. SILVER:  The business was incorporated in 2015

9    and it was in -- and I purchased the business and started

10   operating the business on January 8th, 2016.

11          MR. ROSEN:  January 8th, 2016.  Okay.  Since you

12   started the business, have you taken any distributions out

13   of the business?

14          MR. SILVER:  No.

15          MR. ROSEN:  I went through the bank statements.

16   Were you on salary at the business?

17          MR. SILVER:  In late August of 2020, I decided to

18   start taking a salary.  I managed to take that salary seven

19   times between late August and early October before it became

20   aware to me that it was financially infeasible to do.

21          MR. ROSEN:  Okay.  Were you -- so while you were

22   running this business, how were you living?

23          MR. SILVER:  Excuse me?

24          MR. ROSEN:  How were you paying for your expenses?

25   Were you taking distributions in cash?

```
 1              MR. SILVER:  No.

 2              MR. ROSEN:  Is this your sole source of

 3    employment?

 4              MR. SILVER:  Yes.

 5              MR. ROSEN:  So were you -- so I go back to my

 6    question.  So how were you paying your bills?  Were you

 7    paying your bills out of the business?  Were you taking cash

 8    or were you getting money elsewhere?

 9              MR. SILVER:  I was getting money elsewhere.

10              MR. ROSEN:  From family?

11              MR. SILVER:  My wife works and my family works.

12              MR. ROSEN:  Okay.  All right.

13              David, at this point until I have the checks and

14    the bank statements, I --

15              MR. DOYAGA:  I understand.

16              MR. ROSEN:  Can we continue this, please?  Because

17    --

18              MR. DOYAGA:  Yeah, we're going to -- there's a

19    creditor.

20              MR. ROSEN:  Hold on one second.  I'm sorry.  I may

21    have another question.

22              MR. DOYAGA:  All right.

23              MR. ROSEN:  Just one follow-up question that I

24    just want to make sure in terms of the litigation that took

25    place.  When you retained that firm, were they representing
```

1    the company or were they representing -- also representing

2    you in your individual capacity?

3              MR. SILVER:  They were representing the company.

4              MR. ROSEN:  Okay.  Thank you.  At this point we

5    can turn it over.  And I'll continue it, David.  And when I

6    have the checks, I'll have a better idea.

7              MR. DOYAGA:  Yeah, I understand.  So there was a

8    creditor on the phone.  Can you please identify yourself

9    again?

10             MR. GIAMPOLO:  John Giampolo, Rosenberg Estis,

11   counsel for 13877 Queens Boulevard, LLC.

12             MR. DOYAGA:  Thank you.  Do you have questions for

13   the Debtor's principal?

14             MR. GIAMPOLO:  None at this time.  Well, I would

15   like to reserve the right to ask questions --

16             MR. DOYAGA:  On the adjourn date?

17             MR. GIAMPOLO:  -- following the continuation.

18             MR. DOYAGA:  Yeah.  All right.  So, gentlemen, we

19   are adjourned to April 16.  And we're going to have that

20   case at 9:00 a.m.  April 16th at 9:00 a.m.  Please be on

21   time.  It may be the only case on at that time.  So that's

22   April 16th at 9:00 a.m.  And for now, appearance required.

23   All right?  And please provide those checks and whatever

24   documents were requested before so we can review them.  And

25   we are adjourned.  Thank you.  Thank you.  Bye bye.

1                C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4     transcript is a true and accurate record of the proceedings.

5

6

7

8     Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20     Veritext Legal Solutions

21     330 Old Country Road

22     Suite 300

23     Mineola, NY 11501

24

25     Date:  March 29, 2021

EXHIBIT D

State of Delaware
Secretary of State
Division of Corporations
Delivered  05:59 PM 04/01/2020
FILED  05:59 PM 04/01/2020
SR 20202535803 - File Number 7921741

# STATE OF DELAWARE
# CERTIFICATE OF FORMATION
# OF LIMITED LIABILITY COMPANY

The undersigned authorized person, desiring to form a limited liability company pursuant to the Limited Liability Company Act of the State of Delaware, hereby certifies as follows:

1.      The name of the limited liability company is Wash Funding LLC _____ .

2.      The Registered Office of the limited liability company in the State of Delaware is located at 251 Little Falls Drive _____(street), in the City of Wilmington _____, Zip Code 19808 _____. The name of the Registered Agent at such address upon whom process against this limited liability company may be served  is Corporation Service Company _____ .

By: _____
                                 Authorized Person

Name: Debra Ciapi _____
                                 Print or Type

EXHIBIT E

426388          2020 Jun 29 PM12:31

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME **QB Wash LLC** | | | |
|---|---|---|---|
| OR | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 1c. MAILING ADDRESS **138-77 Queens Blvd** | CITY **Jamica** | STATE **NY** | POSTAL CODE **11435** | COUNTRY **USA** |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION **LLC** | 1f. JURISDICTION OF ORGANIZATION **NY** | 1g. ORGANIZATIONAL ID #, if any ☐ NONE |
|---|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any ☐ NONE |
|---|---|---|---|---|

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME **Wash Funding LLC** | | | |
|---|---|---|---|
| OR | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 3c. MAILING ADDRESS **200 Meeting Street. Suite 206** | CITY **Charleston** | STATE **SC** | POSTAL CODE **29401** | COUNTRY **USA** |
|---|---|---|---|---|

**4. This FINANCING STATEMENT covers the following collateral:**
All items of Personal Property, Fixtures and Equipment located on, Related to or used in connection with the Car Wash and Lube located at 138-77 Queens Blvd, Jamica NY 11435

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-202006298276994

EXHIBIT F

**138-77 QUEENS BLVD. and 138-11 87TH AVE., JAMAICA, NY**
**RENT ARREARS AS OF FEBRUARY 8, 2021**

| Date | Item | | Amount |
|------|------|---|--------|
| 11/01/19 | Base Rent-November 2019 | | $17,337.64 |
| 11/01/19 | Property Tax Reimbursement-November 2019 Installment | | $7,484.95 |
| 11/11/19 | Late Fee (5%) on November 2019 Base Rent | | $866.88 |
| 11/11/19 | Late Fee (5%) on November 2019 Installment of Property Tax Reimbursement | | $374.25 |
| 12/01/19 | Base Rent-December 2019 | | $17,337.64 |
| 12/01/19 | Property Tax Reimbursement-December 2019 Installment | | $7,484.95 |
| 12/10/19 | Payment (applied to November 2019 Base Rent) | | ($17,337.64) |
| 12/10/19 | Interest on November 2019 Base Rent | (39 days @ 1.5% per month) | $335.57 |
| 12/11/19 | Late Fee (5%) on December 2019 Base Rent | | $866.88 |
| 12/11/19 | Late Fee (5%) on December 2019 Installment of Property Tax Reimbursement | | $374.25 |
| 12/13/19 | Property Tax Reimbursement for Jan.-June 2020 for Lot 11 | | $38,514.96 |
| 12/23/19 | Late Fee (5%) on Property Tax Reimbursement for Jan.-June 2020 for Lot 11 | | $1,925.75 |
| 12/26/19 | Property Tax Reimbursement for Jan.-June 2020 for Lot 110 | | $7.20 |
| 01/01/20 | Base Rent-January 2020 | | $17,337.64 |
| 01/05/20 | Late Fee (5%) on Property Tax Reimbursement for Jan.-June 2020 for Lot 110 | | $0.36 |
| 01/07/20 | Payment (applied to Nov. and Dec. 2019 Property Tax Reimbursements) | | ($14,969.90) |
| 01/07/20 | Interest on November 2019 Installment of Property Tax Reimbursement | (67 days @ 1.5% per month) | $247.96 |
| 01/07/20 | Interest on December 2019 Installment of Property Tax Reimbursement | (37 days @ 1.5% per month) | $134.00 |
| 01/11/20 | Late Fee (5%) on January 2020 Base Rent | | $866.88 |
| 01/13/20 | Payment (applied to December 2019 Base Rent) | | ($17,337.64) |
| 01/13/20 | Interest on December 2019 Base Rent | (43 days @ 1.5% per month) | $360.73 |
| 02/01/20 | Base Rent-February 2020 | | $17,337.64 |
| 02/03/20 | Payment (applied to Property Tax Reimbursements for Jan.-June 2020 and January 2020 Base Rent) | | ($55,859.80) |
| 02/03/20 | Interest on Property Tax Reimbursement for Jan.-June 2020 for Lot 11 | (52 days @ 1.5% per month) | $969.09 |
| 02/03/20 | Interest on Property Tax Reimbursement for Jan.-June 2020 for Lot 110 | (39 days @ 1.5% per month) | $0.14 |
| 02/03/20 | Interest on January 2020 Base Rent | (33 days @ 1.5% per month) | $276.84 |
| 02/11/20 | Late Fee (5%) on February 2020 Base Rent | | $866.88 |
| 02/27/20 | Payment (applied to February 2020 Base Rent) | | ($17,337.64) |
| 02/27/20 | Interest on February 2020 Base Rent | (26 days @ 1.5% per month) | $218.12 |
| 03/01/20 | Base Rent-March 2020 | | $17,337.64 |
| 03/11/20 | Late Fee (5%) on March 2020 Base Rent | | $866.88 |
| 04/01/20 | Base Rent-April 2020 | | $17,337.64 |
| 04/11/20 | Late Fee (5%) on April 2020 Base Rent | | $866.88 |
| 05/01/20 | Base Rent-May 2020 | | $17,337.64 |
| 05/11/20 | Late Fee (5%) on May 2020 Base Rent | | $866.88 |
| 06/01/20 | Base Rent-June 2020 | | $17,337.64 |
| 06/09/20 | Application of Security Deposit to May Base Rent | | ($17,337.64) |
| 06/09/20 | Interest on May 2020 Base Rent | (39 days @ 1.5% per month) | $327.18 |

| Date | Item | | Amount |
|------|------|---|--------|
| 06/11/20 | Late Fee (5%) on June 2020 Base Rent | | $866.88 |
| 06/30/20 | Property Tax Reimbursement for July-Dec. 2020 for Lot 11 | | $40,455.76 |
| 06/30/20 | Property Tax Reimbursement for July-Sept. 2020 for Lot 110 | | $1,877.91 |
| 07/01/20 | Application of Security Deposit to June Base Rent | | ($17,337.64) |
| 07/01/20 | Interest on June 2020 Base Rent | (30 days @ 1.5% per month) | $260.06 |
| 07/01/20 | Base Rent-July 2020 | | $17,337.64 |
| 07/10/20 | Late Fee (5%) on Property Tax Reimbursement for July-Dec. 2020 for Lot 11 | | $2,022.79 |
| 07/10/20 | Late Fee (5%) on Property Tax Reimbursement for July-Sept. 2020 for Lot 110 | | $93.90 |
| 07/11/20 | Late Fee (5%) on July 2020 Base Rent | | $866.88 |
| 07/15/20 | Insurance Reimbursement | | $7,883.07 |
| 07/23/20 | Application of Security Deposit to July Base Rent | | ($17,337.64) |
| 07/23/20 | Interest on July 2020 Base Rent | (22 days @ 1.5% per month) | $184.56 |
| 07/25/20 | Late Fee (5%) on Insurance Reimbursement | | $394.15 |
| 08/01/20 | Base Rent-August 2020 | | $17,337.64 |
| 08/11/20 | Late Fee (5%) on August 2020 Base Rent | | $866.88 |
| 08/14/20 | Additional Base Rent Payable for June-August 2020 per rent reset under Lease rider paragraph 50 ($4,391.53/month) | | $13,174.59 |
| 08/24/20 | Late Fee (5%) on Additional Base Rent | | $658.73 |
| 09/01/20 | Base Rent-September 2020 | | $21,729.17 |
| 09/11/20 | Late Fee (5%) on September 2020 Base Rent | | $1,086.46 |
| 10/01/20 | Base Rent-October 2020 | | $21,729.17 |
| 10/01/20 | Property Tax Reimbursement for Oct.-Dec. 2020 for Lot 110 | | $1,910.89 |
| 10/11/20 | Late Fee (5%) on October 2020 Base Rent | | $1,086.46 |
| 10/11/20 | Late Fee (5%) on Property Tax Reimbursement for July-Sept. 2020 for Lot 110 | | $95.54 |
| 11/01/20 | Base Rent-November 2020 | | $21,729.17 |
| 11/11/20 | Late Fee (5%) on November 2020 Base Rent | | $1,086.46 |
| 12/01/20 | Base Rent-December 2020 | | $21,729.17 |
| 12/11/20 | Late Fee (5%) on December 2020 Base Rent | | $1,086.46 |
| 01/01/21 | Base Rent-January 2020 | | $21,729.17 |
| 01/01/21 | Property Tax Reimbursement for Jan.-June 2021 for Lot 11 | | $41,661.36 |
| 01/01/21 | Property Tax Reimbursement for Jan.-March 2021 for Lot 110 | | $1,967.83 |
| 01/11/21 | Late Fee (5%) on January 2021 Base Rent | | $1,086.46 |
| 01/11/21 | Late Fee (5%) on Property Tax Reimbursement for Jan.-June 2021 for Lot 11 | | $2,083.07 |
| 01/11/21 | Late Fee (5%) on Property Tax Reimbursement for Jan.-March 2021 for Lot 110 | | $98.39 |
| 02/01/21 | Base Rent-February 2021 | | $21,729.17 |
| 02/08/21 | Interest on March 2020 Base Rent | (344 days @ 1.5% per month) | $3,143.94 |
| 02/08/21 | Interest on April 2020 Base Rent | (313 days @ 1.5% per month) | $2,842.12 |
| 02/08/21 | Interest on Property Tax Reimbursement for July-Dec. 2020 for Lot 11 | (223 days @ 1.5% per month) | $4,600.46 |
| 02/08/21 | Interest on Property Tax Reimbursement for July-Sept. 2020 for Lot 110 | (223 days @ 1.5% per month) | $213.55 |
| 02/08/21 | Interest on Insurance Reimbursement | (208 days @ 1.5% per month) | $831.98 |
| 02/08/21 | Interest on August 2020 Base Rent | (191 days @ 1.5% per month) | $1,678.81 |
| 02/08/21 | Interest on Additional Base Rent | (178 days @ 1.5% per month) | $1,177.56 |
| 02/08/21 | Interest on September 2020 Base Rent | (160 days @ 1.5% per month) | $1,752.92 |
| 02/08/21 | Interest on October 2020 Base Rent | (130 days @ 1.5% per month) | $1,406.98 |

| Date | Item | | Amount |
|------|------|---|--------|
| 02/08/21 | Interest on November 2020 Base Rent | (99 days @ 1.5% per month) | $1,066.15 |
| 02/08/21 | Interest on December 2020 Base Rent | (69 days @ 1.5% per month) | $730.36 |
| 02/08/21 | Interest on January 2020 Base Rent | (38 days @ 1.5% per month) | $399.54 |
| 02/08/21 | Interest on Property Tax Reimbursement for Jan.-June 2021 for Lot 11 | (38 days @ 1.5% per month) | $766.03 |
| 02/08/21 | Interest on Property Tax Reimbursement for Jan.-March 2021 for Lot 110 | (38 days @ 1.5% per month) | $36.18 |

| | | |
|---|---|---|
| **RENT ARREARS** | | **$337,502.47** |
| **Base Rent** | $195,562.53 | |
| **Property Taxes and Insurance Reimbursements** | $95,756.82 | |
| **Late Fees and Interest** | $46,183.12 | |
| **WATER/SEWER ARREARS** | | **$30,730.20** |
| **UNPAID MUNCIPAL VIOLATIONS** | | **$2,302.67** |
| **TOTAL** | | **$370,535.34** |

EXHIBIT G

## TRANSACTIONS IN QB WASH LLC CITIBANK CHECKING ACCOUNT 2019-2020

| | Jan 19 | Feb 19 | Mar 19 | Apr 19 | May 19 | Jun 19 | Jul 19 | Aug 19 | Sept 19 | Oct 19 | Nov 19 | Dec 19 | 2019 Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Deposits** | | | | | | | | | | | | | |
| ACH | 64,366 | 80,665 | 70,270 | 75,516 | 82,722 | 62,734 | 78,840 | 69,079 | 88,442 | 64,667 | 78,350 | 100,931 | 916,582 |
| Teller/ATM | 8,732 | 2,623 | 11,240 | 5,863 | 8,957 | | 11,604 | 5,489 | 5,437 | 8,807 | 4,247 | 4,844 | 77,843 |
| Funding-Scott | | | | | | | | | | | | | |
| Silver Wires | 65,000 | | | | | | | 30,000 | | | | | 95,000 |
| Funding-PPP Loan | | | | | | | | | | | | | 0 |
| **Total Deposits** | 138,098 | 83,288 | 81,510 | 81,379 | 91,679 | 62,734 | 90,444 | 104,568 | 93,879 | 73,475 | 82,597 | 105,775 | 1,089,425 |
| **Payments** | | | | | | | | | | | | | |
| Wire | 25,740 | 25,740 | 16,833 | 22,708 | 5,785 | 0 | 17,338 | 24,823 | 17,338 | 17,338 | 20,090 | 17,338 | 211,068 |
| Attorney/Appraise | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| ACH/Other EFT | 25,267 | 16,236 | 33,443 | 15,644 | 25,733 | 21,620 | 26,069 | 24,343 | 23,848 | 31,872 | 22,079 | 11,974 | 278,128 |
| Checks | 25,325 | 44,390 | 30,667 | 35,677 | 51,038 | 51,490 | 44,674 | 45,395 | 36,220 | 35,494 | 32,956 | 52,415 | 485,741 |
| Cash Withdrawals | 57,355 | 2,000 | | 3,500 | 7,000 | | 4,000 | 4,400 | 3,000 | 7,500 | 2,000 | | 90,755 |
| Debit Card Pmts | 300 | 965 | 690 | 357 | 479 | 2,576 | 627 | 422 | 314 | 443 | 351 | 558 | 8,084 |
| **Total Payments** | 133,987 | 89,330 | 81,633 | 77,886 | 90,035 | 75,686 | 92,708 | 99,383 | 80,721 | 92,647 | 77,476 | 82,284 | 1,073,776 |

| | Jan 20 | Feb 20 | Mar 20 | Apr 20 | May 20 | Jun 20 | Jul 20 | Aug 20 | Sept 20 | Oct 20 | Nov 20 | Dec 20 | 2020 Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Deposits** | | | | | | | | | | | | | |
| ACH | 75,968 | 71,742 | 62,897 | 6,417 | 48,820 | 88,720 | 71,246 | 81,566 | 82,780 | 64,032 | 75,141 | 73,042 | 802,371 |
| Teller/ATM | 5,977 | 3,359 | 1,221 | 6,000 | 6,174 | 575 | 12,121 | 7,445 | 808 | 6,201 | 7,213 | 4,347 | 61,441 |
| Funding-Scott | | 70,000 | | | | | | | | | | | 70,000 |
| Silver Wires | | | | | | | | | | | | | |
| Funding-PPP Loan | | | | 28,659 | | | | | | | | | 28,659 |
| **Total Deposits** | 81,945 | 145,101 | 64,118 | 41,076 | 54,994 | 89,295 | 83,366 | 89,012 | 83,588 | 70,233 | 82,355 | 77,389 | 962,471 |
| **Payments** | | | | | | | | | | | | | |
| Wire | 32,308 | 55,860 | 0 | 0 | 3,440 | 17,338 | 17,338 | 0 | 0 | 2,970 | 0 | 0 | 129,253 |
| Attorney/Appraise | 1,500 | | 2,250 | 0 | 500 | 500 | 13,575 | 17,490 | | 9,480 | 10,920 | 11,155 | 66,870 |
| ACH/Other EFT | 24,866 | 28,576 | 12,227 | 9,852 | 11,032 | 20,423 | 20,300 | 14,576 | 21,531 | 22,855 | 25,408 | 22,640 | 234,286 |
| Checks | 51,777 | 46,365 | 33,289 | 28,204 | 25,712 | 46,017 | 44,910 | 49,480 | 59,265 | 53,490 | 43,029 | 56,171 | 537,709 |
| Cash Withdrawals | | | 2,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2,000 |
| Debit Card Pmts | 657 | 283 | 277 | 81 | 1,550 | 563 | 287 | 356 | 223 | 551 | 1,426 | 1,429 | 7,682 |
| **Total Payments** | 111,108 | 131,084 | 50,043 | 38,136 | 41,735 | 84,841 | 96,410 | 81,902 | 81,019 | 89,346 | 80,782 | 91,395 | 977,801 |

## CALCULATIONS BASED ON TRANSACTIONS IN QB WASH LLC CITIBANK CHECKING ACCOUNT 2019-2020

| | | Y/Y |
|---|---|---|
| Unaccounted-for Cash, March-December 2020, Low Estimate (20% of Total Business Revenue, Assumes Teller/ATM Deposits Are Cash) | $111,560 | |
| Unaccounted-for Cash, March-December 2020, High Estimate (25% of Total Business Revenue, Assumes Teller/ATM Deposits Are Not Cash) | $235,589 | |
| Net Cash Deposits (Payments), March-May 2020, Excluding PPP Loan Deposit | $1,615 | |
| Deposited Business Revenue, 2019 Full Year | $994,425 | |
| Deposited Business Revenue, 2020 Full Year | $863,812 | -13.1% |
| Deposited Business Revenue, 2019 Excluding March-May | $739,858 | |
| Deposited Business Revenue, 2020 Excluding March-May | $732,283 | -1.0% |
| Deposited Business Revenue, 2019 June-Sept | $321,625 | |
| Deposited Business Revenue, 2020 June-Sept | $345,261 | 7% |
| Deposited Business Revenue, 2019 June-Nov | $477,697 | |
| Deposited Business Revenue, 2020 June-Nov | $497,848 | 4% |

EXHIBIT H

Case 1-21-40301-ess   Doc 43-2   Filed 06/15/21   Entered 06/15/21 16:03:09
INDEX NO. 715071/2020
RECEIVED NYSCEF: 01/15/2021

SHORT FORM ORDER

**FILED**

SUPREME COURT - STATE OF NEW YORK
CIVIL TERM - IAS PART 34 - QUEENS COUNTY
25-10 COURT SQUARE, LONG ISLAND CITY, N.Y. 11101

**1/15/2021**
**2:48 PM**

P R E S E N T : **HON. ROBERT J. MCDONALD**
**Justice**

**COUNTY CLERK**
**QUEENS COUNTY**

- - - - - - - - - - - - - - - - - - - x

138-77 QUEENS BLVD LLC,                    Index No.: 715071/2020

                    Plaintiff,            Motion Date: 12/24/2020

        - against -                       Motion No.: 25

QB WASH LLC AND "XYZ CORP.",              Motion Seq.: 2

                    Defendant.
- - - - - - - - - - - - - - - - - - - x
The following electronically filed documents read on this motion
by plaintiff for an Order directing payment of prospective and
retroactive use and occupancy:

|                                                          | Papers Numbered |
| -------------------------------------------------------- | --------------- |
| Notice of Motion-Affirmation-Exhibits-Memo. of Law...    | EF 14 - 31      |
| Affirmation in Opposition-Exhibits-Memo. of Law......    | EF 34 - 50      |
| Affirmation in Reply-Exhibits-Memo. of Law..........     | EF 51 - 58      |

        This is a commercial ejectment action, seeking the eviction
of a commercial tenant, defendant QB Wash LLC, from the premises
located at 138-77 Queens Boulevard and 138-77 87th Avenue, in
Queens County, New York on which tenant operates a car wash and
automotive lube shop.

        Plaintiff landlord commenced this action on September 4,
2020. Defendant tenant filed an answer with counterclaims on
October 26, 2020. Landlord now seeks an Order directing payment
of prospective and retroactive use and occupancy.

        In support of the motion, landlord submits an affidavit of
its manager, Ethan D. Wohl. Mr. Wohl affirms, inter alia, that
the relevant Lease, entered into in 2010, has a 25-year term that
requires tenant, in addition to paying base rent, to reimburse
landlord for real estate taxes and insurance and assume full
responsibility for maintenance and repairs. Tenant has failed to
pay rent since February 2020, resulting in present arrears
totaling over $184,000. The monthly base rent for the June 2019

1

Case 1-21-40301-ess    Doc 43-2    Filed 06/15/21    Entered 06/15/21 16:03:09

through May 2020 lease year was $17,337 per month. The reimbursable real estate taxes and insurance for 2020 have totaled approximately $94,000. The Lease provides for the base rent to be reset to market rate in June 2020, and sets forth a procedure requiring good faith negotiations between the parties, followed by appointment of party appraisers, followed by appointment of a neutral third party appraiser if necessary. In February 2020, pursuant to the rent reset procedure set forth in the Lease, the parties' principals met twice. Tenant stated that it would need a substantial rent reduction. In March 2020, the parties designated appraisers and exchanged appraisals in late May 2020. The parties' appraisers' divergent valuations triggered appointment of a third, neutral appraiser. In July 2020, landlord accepted tenant's proposal to appoint Steven Schleider. In June 2020, following the parties' failed negotiations over rent arrears, landlord drew down the one-month security deposit it held and sent tenant a notice to replenish the security deposit or face termination of the Lease. Landlord also sent a notice to cure an outstanding Fire Department violation and lapsed petroleum bulk storage registration. Tenant replenished the security deposit and timely cured the outstanding Fire Department violation. In July, landlord again drew down the security deposit and sent tenant a new notice to replenish. Tenant again replenished the security deposit. On August 5, 2020, plaintiff received a Determination of Theft of Services and Cease and Desist Notice issued by the New York City Department of Environmental Protection, finding that tenant had illegally removed DEP's water meter and connected an unmetered water supply. Landlord immediately emailed the notice to tenant. A formal notice to cure was sent on August 6, 2020. On August 10, 2020, landlord sent tenant a second notice to cure, regarding water arrears and an unpaid Fire Department violation. On August 14, 2020, Mr. Schleider rendered his rent reset determination, determining the fair market base rent for the premises to be $21,729, a 25% increase over the prior base rent. Thereafter, the parties' principals met. Tenant offered to purchase the premises for $2 million or pay $14,500 per month base rent. Landlord rejected the offers. Tenant allowed the cure periods provided in the August 6 and August 10 Notices to lapse without attempting to correct the Lease violations specified therein. On August 27, 2020, landlord sent a cancellation notice, which terminated the Lease effective September 3, 2020.

In opposition, Zachary Silver, a member of tenant, submits an affidavit affirming, inter alia, that tenant did not default under the lease as its purpose was frustrated and became impossible as a consequence of the Covid-19 pandemic. Specifically, Mr. Silver points to Paragraph 80 of the Lease,

2

Case 1-21-40301-ess   Doc 43-7   Filed 06/15/21   Entered 06/15/21 16:03:09

which states that the Lease "is granted subject to the following
. . . any other applicable governmental or quasi-governmental
requirements". Additionally, Paragraph 9 of the Lease provides
that "if any part of the premises is rendered un-tenantable by
reason of such damages, the annual fixed rent payable hereunder
. . . shall be abated for the period from the date of such damage
to the date when such part of the premises shall have been made
tenantable". Mr. Silver contends that it was never the parties'
intent to pay rent if the premises would remain closed or if car
traffic declined to the levels it is now. Mr. Silver further
affirms that tenant was barred from operating the property as a
car wash, automotive lube and detail shop for at least five
months.

A threshold issue is whether Governor Andrew M. Cuomo's
moratorium on commercial evictions precludes this action.
Executive Order 202.28 states, in relevant part, "[t]here shall
be no initiation of a proceeding or enforcement of either an
eviction of commercial tenant, for nonpayment of rent". The
Executive Order only applies to proceedings and not actions.
RPAPL 701 specifies that a landlord-tenant proceeding is a
special proceeding. Since this is an ejectment action, rather
than a landlord-tenant proceeding, Executive Order 202.28, and
the executive orders extending the protections stated therein,
does not preclude this action (see CPLR 103[a] & [b]).

Tenant also argues that the notices to cure violated
Executive Order 202.8, which tolled "any specific time limit for
the. . . service of any. . . notice. . . process or proceeding,
as prescribed by the procedural laws of the state". While
Executive Order 202.8 does toll procedural laws of the state, it
does not address contractual deadlines, including the sending of
notices. Tenant further argues that landlord has harassed it with
multiple notices to cure and a notice of cancellation. However,
N.Y.C. Admin. Code 22-902.b, states that a landlord's lawful
termination of a lease shall not constitute harassment.
Accordingly, the notices to cure and the commencement of this
action were proper.

Turning to whether landlord is entitled to use and
occupancy, the "award of use and occupancy during the pendency of
an action or proceeding accommodates the competing interests of
the parties in affording necessary and fair protection to both"
(255 Butler Assoc., LLC v 255 Butler, LLC, 173 AD3d 651, 653 [2d
Dept. 2019][internal quotation marks omitted]). Although tenant
contends that use and occupancy is awarded only after the
expiration of a lease, use and occupancy has been awarded under
both existing and expired leases (see Andejo Corp. v South St.

3

Case 1-21-40301-ess    Doc 43-2    Filed 06/15/21    Entered 06/15/21 16:03:09

Seaport Ltd. Partnership, 35 AD3d 174 [1st Dept. 2006]).
Additionally, use and occupancy has been awarded where the
principal dispute concerned the amount of rent payable (see 255
Butler Assoc., LLC v 255 Butler, LLC, 173 AD3d 651, 654 [2d Dept.
2019][if tenant "is successful at trial and it is determined that
[tenant] did not default on its obligations under the lease,
[tenant] may be entitled to recover damages, including a refund
or a rent credit"]). Even during the Covid-19 pandemic, courts
have held that tenants are required to pay use and occupancy (see
CP Assoc. LLC v Concourse Plaza Family Dental LLC, 2020 NY Slip
Op 33875[U][Sup Ct, New York Cnty 2020]; Rame, LLC v Metropolitan
Realty Mgt., Inc., 2020 NY Slip Op 33538[U][Sup Ct, New York Cnty
2020]; Gap v 44-45 Broadway Leasing Co. LLC, 2020 NY Slip Op
32403[U][Sup Ct, New York Cnty 2020]).

        Here, the equities support payment of use and occupancy.
Tenant has no claim that landlord has done anything to impair
tenant's performance under the Lease or use and enjoyment of the
premises. Although tenant argues that a partial closure of its
business due to the Covid-19 pandemic justifies the non-payment
of rent, this Court finds that permitting tenant to remain in
possession of the subject premises without paying for its use
would be "manifestly unfair" (MMB Assocs. v Dayan, 169 AD2d 422,
422 [1st Dept. 1991]). Moreover, the Court need not adjudicate
the merits of whether tenant is entitled to a rent abatement on
account of Covid-19 at this juncture (see East 4th St. Garage v
Estate of Berkowitz, 265 AD2d 249 [1999][finding that if tenant
contends that the base rent does not represent fair valuations of
current market rates, tenant's remedy is a speedy trial]).

        "In determining the reasonable value of use and occupancy,
the rent reserved under the lease, while not necessarily
conclusive, is probative" (Mushlam, Inc. v Nazor, 80 AD3d 471,
472 [1st Dept. 2011]; see Andejo Corp. v South St. Seaport Ltd.
Partnership, 35 AD3d 174 [1st Dept. 2006]). At this point, the
Court sees no reason to divert from the neutral appraiser's
values. The rent was set in August 2020, in the midst of the
pandemic, by a neutral appraiser who was chosen by tenant, and
consistent with the Lease's rent reset process.

        Accordingly, based on the reasons stated above, and in the
discretion of the Court, it is hereby

        ORDERED, that the motion is granted to the extent that
defendant tenant QB WASH LLC shall pay prospective use and
occupancy to plaintiff landlord 138-77 QUEENS BLVD LLC in the
amount of $29,765 per month ($21,729 per month as set by the
appraiser plus $8,036, which is half of the annual real estate
taxes and insurance), from and after February 1, 2021; and it is
further

4

Case 1-21-40301-ess   Doc 43-2   Filed 06/15/21   Entered 06/15/21 16:03:09

INDEX NO. 715071/2020

NYSCEF DOC. NO. 59

RECEIVED NYSCEF: 01/15/2021

ORDERED, that within 20 days of service of a copy of this Order with Notice of Entry, defendant tenant QB WASH LLC shall post a bond in the amount of $255,758, on account of the period through January 31, 2021; and it is further

ORDERED, that defendant tenant QB WASH LLC shall pay all arrears for water and sewer charges at the premises and timely payment of all future and sewer charges at the premises.

Dated: January 15, 2021
      Long Island City, N.Y.

ROBERT J. MCDONALD
J.S.C.

**FILED**

**1/15/2021**
**2:48 PM**

**COUNTY CLERK**
**QUEENS COUNTY**

5

EXHIBIT I

| | | |
|---|---|---|
| IN THE MATTER OF: | * | BEFORE THE MARYLAND |
| | | STATE COLLECTION AGENCY |
| LVNV FUNDING LLC; | * | LICENSING BOARD IN THE |
| | | OFFICE OF THE COMMISSIONER |
| and | * | OF FINANCIAL REGULATION |
| | | |
| RESURGENT CAPITAL SERVICES | * | |
| LIMITED PARTNERSHIP, | | |
| | * | CFR-FY2012-012 |
| Respondents | | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## SETTLEMENT AGREEMENT

This Settlement Agreement is entered into this 28th day of June, 2012, by and between the Maryland State Collection Agency Licensing Board in the Office of the Commissioner of Financial Regulation (hereinafter the "Agency") and LVNV Funding LLC ("LVNV"), and Resurgent Capital Services Limited Partnership a/k/a Resurgent Capital Services L.P. ("Resurgent"), (collectively, the "Respondents"). The Respondents are part of a family of companies under Sherman Financial Group LLC. The Agency and Respondents (the "Parties") consent to the entry of this Settlement Agreement (the "Agreement") as a final resolution of this matter. All paragraphs below are intended to be part of the contractual obligations of the Parties hereto, so far as they may be so construed, and are not mere recitals to this Agreement.

1.     Pursuant to the Maryland Collection Agency Licensing Act ("MCALA"), at Md. Code Ann., Bus. Reg. ("BR") § 7-101 *et seq.*, the Agency is responsible for licensing and regulating persons engaged in collection agency activities in the State of Maryland (the "State").

2.     The definition of "collection agency" under BR § 7-101(c) includes, among other things, "a person who engages directly or indirectly in the business of: (1) (i) collecting for, or

soliciting from another, a consumer claim; or (ii) collecting a consumer claim the person owns, if the claim was in default when the person acquired it."

3.      BR § 7-401(a) provides that, "except as otherwise provided in this title, a person may not knowingly and willfully do business as a collection agency in the State unless the person has a license."

4.      A non-exempt person who acquires consumer claims in default at the time of acquisition (a "consumer debt purchaser"), who then attempts to collect on those debts through litigation in Maryland State courts, is conducting business as a "collection agency" in the State under BR § 7-101(c). This applies regardless of whether the consumer debt purchaser is represented in litigation by attorneys who are also licensed as collection agencies. As such, a consumer debt purchaser collecting debts through litigation in Maryland State courts is required to be licensed as a collection agency under MCALA, and is subject to the regulatory authority of the Agency in the conduct of that litigation.

5.      A consumer debt purchaser collecting debts through litigation in Maryland State courts also meets the definitions of "collector" under Md. Code Ann., Com. Law ("CL") § 14-201(b) of the Maryland Consumer Debt Collection Act ("MCDCA"), at CL § 14-201 *et seq.*, and of "debt collector" under 15 U.S.C. § 1692(a) of the Fair Debt Collection Practices Act ("FDCPA"), at 15 U.S.C. § 1692 *et seq*.

6.      Pursuant to BR § 7-308(a), the Agency can bring an action to suspend or revoke the license of a collection agency "if the licensee or any owner, director, officer, member, partner, or agent of the licensee" engages in various prohibited activities, including, among other things, the following: "(3) in connection with the collection of any consumer claim: ... (ii)

2

engages in any illegal or dishonest activities; or (4) knowingly or negligently violates the

Maryland Consumer Debt Collection Act."

      7.      Pursuant to CL § 14-202(8) of the MCDCA, "[i]n collecting or attempting to

collect an alleged debt," a debt collector (or "collector") may not "[c]laim, attempt, or threaten to

enforce a right with knowledge that the right does not exist."

      8.      The FDCPA provides, in relevant part, as follows:

### § 1692e. False or misleading representations

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

\*\*\*

(2)    The false representation of—
    (A)    the character, amount, or legal status of any debt; or

\*\*\*

(5)    The threat to take any action that cannot legally be taken or that is not intended to be taken.

\*\*\*

(10)  The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

\*\*\*

### § 1692f. Unfair practices

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1)    The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

\*\*\*

      9.      Thus, the Agency has the authority to bring actions under MCALA against

persons engaged in various prohibited activities in connection with the collection of any

consumer claim, including for violations of the FDCPA pursuant to BR § 7-308(a)(3)(ii) (engaging in illegal activities), and for violations of the MCDCA pursuant to BR §§ 7-308(a)(3)(ii) and 7-308(a)(4). Such authority extends to both litigation-related collection activities, as well as to non-litigation (*i.e.*, "traditional") collection activities. Further, pursuant to BR § 7-205 and Md. Code Ann., Fin. Inst. ("FI") § 2-115(b), such enforcement actions could result in an order to cease and desist, suspension or revocation of Maryland State collection agency licenses, civil money penalties for each violation of MCALA, the MCDCA, and FDCPA (as violations of MCALA), an order to provide restitution to affected Maryland consumers or to take other affirmative action to correct the violations, or any combination of the aforementioned sanctions.

10.     LVNV is a consumer debt purchaser that, on February 18, 2010, became duly licensed as a Maryland collection agency, as that term is defined in BR § 7-101(c), receiving collection agency license number 04-5594 for its business location at 625 Pilot Road, Suite 3, Las Vegas, Nevada 89119. Resurgent is a collection agency that services the consumer claims owned by LVNV and other business entities. At all times relevant to the facts set forth herein, Resurgent has been duly licensed under MCALA as a Maryland collection agency, currently holding collection agency license number 04-2955 for its business location at 15 S. Main Street, Suite 600, Greenville, South Carolina 29601.

11.     On October 25, 2011, the Agency issued a Summary Order to Cease and Desist and Summary Suspension of Collection Agency Licenses against Respondents and certain affiliated parties of the Respondents (the "Summary Order") after finding, in the Agency's opinion, reasonable grounds to believe that the Respondents and their affiliated parties had engaged in unlicensed collection agency activities and other violations of MCALA, and were

violating the provisions of the MCDCA and the FDCPA referenced above, (collectively the "Alleged Violations"), and upon determining that action under FI § 2-115 and Md. Code Ann., State Gov't ("SG") § 10-226(c)(2), was appropriate.

12.     The parties subsequently entered into an Interim Settlement Agreement and Modification to Summary Order to Cease and Desist and Summary Suspension of Collection Agency Licenses on November 17, 2011 (the "Interim Agreement"), pursuant to which Respondents were permitted to resume certain collection activities.

13.     This Agreement is intended to resolve all administrative, judicial, or other legal actions between the Parties, as well as any such action which the Agency brought, or could have brought, against Respondents or Respondents' predecessors, successors, subsidiaries, affiliates, parents, shareholders, current or former directors, officers, employees, or assigns prior to the execution of this Agreement, relating to those issues and pending collection matters which formed the basis for the Summary Order, and is intended to fully supersede and replace the Summary Order and the Interim Agreement.

14.     Respondents do not admit to the Alleged Violations set forth herein but nonetheless wish to resolve the Alleged Violations without the need for an administrative hearing, thereby avoiding the costs associated with such hearing and any potential appeals, and therefore agree to resolve this matter fully, finally, and completely without an administrative hearing as set forth in this Agreement, and further accept without condition, and fully agree to abide by, each and every term set forth in this Agreement.

15.     The Agency desires to ensure that Respondents will comply with all applicable statutes, regulations, and others laws governing collection agency activities in the State of

Maryland, including complying with MCALA, the MCDCA, and the FDCPA, and further wishes to avoid the costs to the taxpayers of an administrative hearing and any potential appeals.

16.     Neither this Agreement nor the agreement of the Respondents to make payments to the Agency or to provide restitution as set forth below shall be construed as an admission of liability by the Respondents, but is in compromise and settlement of the Alleged Violations. The Respondents expressly deny any such liability or wrongdoing.

17.     Respondents represent that, to the best of their knowledge, information, and belief, as of the date of this Agreement they are in compliance with the MCDCA, the FDCPA, and MCALA.

18.     Respondents have agreed to take each and every one of the following actions in exchange for a final resolution of this matter:

a.     Respondents will pay a total voluntary penalty to the Agency of $1,000,000 (ONE MILLION DOLLARS) in the form of a single check made payable to the "Commissioner of Financial Regulation" immediately upon this Agreement being fully executed.

b.     With regard to pending debt collection cases filed in Maryland district courts on behalf of any of the Respondents named in the Summary Order, Respondents will dismiss without prejudice all cases filed prior to the date of this Agreement. To effectuate these dismissals, Respondents will submit a proposed order, in a form agreed to by the Agency, to the Chief Judge of the District Court of Maryland within 15 days of the date this Agreement is fully executed, and will notify the Agency once this has been completed. Attachment 1 is a spreadsheet listing the names of the affected Maryland consumers, the case numbers to be dismissed, the specific district court in which each case was filed, the name of the plaintiff, and

6

the amount claimed in each complaint. Pursuant to this paragraph, 3,564 cases are being dismissed without prejudice, and the amount claimed in these cases totals $7,770,564.98.

        c.      With regard to all debt collection cases filed in Maryland district courts on behalf of any of the Respondents named in the Summary Order, pursuant to which a judgment was obtained prior to the date of this Agreement, with the exception of accounts that were sold by Respondents prior to the date of the Summary Order to a party not affiliated with any of the Respondents named in the Summary Order and of consumer claims that are subject to a pending bankruptcy proceeding or were discharged in bankruptcy, Respondents will provide restitution to the consumer defendants by crediting their accounts in an amount equal to the sum of all prejudgment interest and attorney's fees awarded by the court, with the credits being applied to the account balance as of March 12, 2012. If the amount of the credit exceeds the balance remaining on the account as of March 12, 2012, the account shall be considered satisfied in full as of that date. To effectuate these credits, within 15 days of the date this Agreement is fully executed Respondents will both update their internal account records to reflect these credits, and will also submit proposed orders, in a form agreed to by the Agency, to the Chief Judge of the District Court of Maryland as follows: for consumer claims where the total credit exceeds the balance remaining on the consumer's account as of March 12, 2012, Respondents shall submit appropriate orders indicating that the judgments have been satisfied in full; and for cases where the total credit is less than the balance remaining on the consumer's account as of March 12, 2012, Respondents shall submit appropriate orders indicating that the judgments against the Maryland consumers have been satisfied with regard to all prejudgment interest and attorney's fees awarded by the courts. Attachment 2 is a spreadsheet providing the name of each affected Maryland consumer, the applicable court and case number, the name of the plaintiff, the amount

7

of prejudgment interest awarded by the court, the amount of attorney's fees awarded by the court, and the total amount of the credit (consisting of the sum of the prejudgment interest and attorney's fees). There are 5,793 consumers entitled to credits pursuant to this paragraph, and the amount of all such credits totals $3,609,367.74.

        d.        With regard to all debt collection cases filed in Maryland district courts on behalf of any of the Respondents named in the Summary Order, in which a settlement upon stipulated terms was reached with the Maryland consumer prior to a judgment being entered by the court, Respondents will provide restitution to the consumer defendants by crediting their accounts the total amount of the settlement that exceeds the amount claimed by the plaintiffs, which is the amount sued for in the case excluding any interest, attorney's fees and court costs, with the credits being applied to the account balance as of March 12, 2012. If the amount of the credit exceeds the balance remaining on the account as of March 12, 2012, the account shall be considered satisfied in full as of that date. Respondents will update their internal account records to reflect these credits within 15 days of the date this Agreement is fully executed. Attachment 3 is a spreadsheet providing the name of each affected Maryland consumer, the applicable court and case number, the name of the plaintiff, and the total amount of the credit. There are 453 consumers entitled to credits pursuant to this paragraph, and the amount of all such credits totals $235,824.72.

        e.        The credits referenced in Paragraphs 18.c and 18.d, above, shall be applied as of March 12, 2012, and any payments received after that date shall be applied to reduce the balance on the consumer's account only after the associated credit has been applied.

        f.        Respondents will pay administrative expenses incurred by various governmental units totaling $23,567 (TWENTY-THREE THOUSAND FIVE HUNDRED AND

SIXTY-SEVEN DOLLARS) by way of separate checks as designated by the Agency immediately upon this Agreement being fully executed.

g.      Respondents will appropriately update the credit reports of the applicable consumers affected by this Agreement as required by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.

h.      The Respondents shall not seek, and are not entitled to obtain, releases from consumers in conjunction with the restitution discussed herein or otherwise related to this Agreement.

i.      Respondents agree that they are subject to the regulatory authority of the Agency with regard to their consumer collection activities involving Maryland residents.

j.      Respondents will make good faith efforts to ensure that their collection activities in the State of Maryland, including both their traditional and their litigation-related collection activities, fully comply with all applicable statutes, regulations, and other laws governing collection agency activities in the State, including but not limited to MCALA, the MCDCA, and the FDCPA.

k.      Respondents will provide the Agency with an acceleration contact for resolution of Maryland consumer complaints filed with the Agency against Respondents.

19.      Respondents acknowledge that they have voluntarily entered into this Agreement with full knowledge of their right to a hearing pursuant to FI § 11-518 and the Maryland Administrative Procedure Act – Contested Cases (SG § 10-201 *et seq*.), arising from the Summary Order issued by the Agency based on the Alleged Violations, and that Respondents hereby waive their right to a hearing. Respondents further acknowledge that they have had an opportunity to consult with independent legal counsel in connection with the waiver of this right

and with the negotiation and execution of this Agreement, and that they have in fact consulted with independent legal counsel.

20.     The Parties hereto agree that this Agreement shall be binding upon all Parties and enforceable in a court of competent jurisdiction by the Agency and by Respondents, shall be admissible in court, if relevant, and shall be binding upon and inure to any of the Respondents' present and future owners, principals, directors, officers, members, partners, managers, successors, and assigns.

21.     The Parties hereto acknowledge that this Agreement does not in any way relate to, impact, or otherwise affect the legal rights of, or preclude the Agency from bringing actions against, persons not Parties to this Agreement, except as set forth in Paragraph 22, below.

22.     The Agency fully and finally releases, acquits, and forever discharges Respondents, as well as Respondents' predecessors, successors, subsidiaries, affiliates, parents, shareholders, current or former directors, officers, employees, and assigns, from any claim, action, suit, or proceeding, whether civil or administrative, the Agency has for conduct occurring prior to the date that this Agreement is fully executed which relates to the subject matter of the Alleged Violations set forth in the Summary Order.

23.     The Parties hereto agree that they shall not disparage or otherwise undermine this Agreement in any way.

24.     The Parties hereto agree that any notices hereunder shall be effectively delivered when sent via overnight delivery or certified mail as follows:

a.   To the Agency:

Commissioner of Financial Regulation
500 North Calvert Street, Suite 402
Baltimore, Maryland 21202-3651
Attention: Anne Balcer Norton, Deputy Commissioner

10

Copy to:

W. Thomas Lawrie, Assistant Attorney General
Department of Labor, Licensing, and Regulation
500 North Calvert Street, Suite 406
Baltimore, Maryland 21202-3651

b. To the Respondents:

Scott E. Silver, General Counsel
200 Meeting Street, Suite 206
Charleston, South Carolina 21202-3651

Copy to:

Ronald S. Canter, Esquire
Law Offices of Ronald S. Canter, LLC
200-A Monroe Street, Suite 104
Rockville, Maryland 20850

NOW, THEREFORE, it is, by the Commissioner of Financial Regulation on behalf of the Agency, HEREBY

**ORDERED** that the Respondents shall adhere to all terms of this Settlement Agreement; it is further

**ORDERED** that this Agreement fully supersedes and replaces both the Summary Order to Cease and Desist and Summary Suspension of Collection Agency Licenses issued by the Agency on October 25, 2011 ("Summary Order"), as well as the Interim Settlement Agreement and Modification to Summary Order to Cease and Desist and Summary Suspension of Collection Agency Licenses which the Parties entered into on November 17, 2011 ("Interim Agreement"); and it is further

**ORDERED** that, except for LVNV and Resurgent, all of the Respondent business entities and individuals named in the Summary Order are dismissed from this action; and it is further

**ORDERED** that, those restrictions placed on the collection-related litigation activities of LVNV and Resurgent pursuant to the Summary Order, and which were subsequently modified pursuant to the Interim Agreement, are lifted; and that the collection agency licenses of LVNV and Resurgent are fully reinstated without restriction; and it is further

**ORDERED** that, Respondents shall make good faith efforts to ensure that their litigation related collections activities in the State of Maryland comply with all applicable federal and Maryland State laws, including but not limited to MCALA, the MCDCA, and the FDCPA; and it is further

**ORDERED** that, in the event Respondents, or any of the owners, parents, directors, officers, members, partners, managers, employees, agents, or successors of Respondents, violate any provision of this Settlement Agreement, or otherwise engage in activities similar to those which formed the basis for the Alleged Violations set forth in the Summary Order, the Agency may, at the Agency's discretion, take any enforcement actions available under FI § 2-115, BR § 7-205, BR § 7-308(a), and/or SG § 10-226(c)(2), as well as take any other enforcement actions as permitted by, and in accordance with, applicable State law; and it is further

**ORDERED**, that this matter shall be resolved in accordance with the terms of this Settlement Agreement and the same shall be reflected among the records of the Office of the Commissioner of Financial Regulation; and it is further

**ORDERED** that this document shall constitute a Final Order of the Maryland State Collection Agency Licensing Board in the Office of the Commissioner of Financial Regulation, and that the Agency may consider this Settlement Agreement in connection with, and in deciding, any action or proceeding before the Agency; and that this Settlement Agreement may, if relevant, be admitted into evidence in any matter before the Agency.

It is so ORDERED.

IN WITNESS WHEREOF, this Settlement Agreement is executed on the day and year first above written.

MARYLAND STATE COLLECTION
AGENCY LICENSING BOARD IN THE
OFFICE OF THE COMMISSIONER OF
FINANCIAL REGULATION

By: _____

Mark Kaufman
Commissioner of Financial Regulation
Chairperson, State Collection Agency
Licensing Board

LVNV FUNDING LLC

By: _____

Kevin Branigan
President
Authorized Representative

RESURGENT CAPITAL SERVICES
LIMITED PARTNERSHIP

By: _____

John Shinovich
Vice President
Authorized Representative

13

**Attachments 1 – 3**

**Redacted in Full**

EXHIBIT J

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit https://www.djreprints.com.

https://www.wsj.com/articles/most-big-debt-collectors-backed-off-during-the-pandemic-one-pressed-ahead-11617804180

MARKETS | FINANCE

# Most Big Debt Collectors Backed Off During the Pandemic. One Pressed Ahead.

Little-known Sherman Financial, which buys defaulted credit-card debt, filed more collection lawsuits after lockdowns began

*By [Shane Shifflett](#) and [Justin Scheck](#)*
April 7, 2021 10:03 am ET

▶ **Listen to this article**
16 minutes

When Covid-19 hit the economy, most debt collectors gave borrowers a break, cutting back on lawsuits amid lockdowns, closed courts and loan-forbearance initiatives.

One of the biggest and least-known companies in the industry did the opposite.

Sherman Financial Group filed more lawsuits to squeeze cash from people behind on their credit-card bills. A Wall Street Journal analysis, based on the five state-court districts with searchable online records, showed Sherman had the largest year-over-year increase of any firm identified between last March 15 and Dec. 31—up 52% from the year-earlier period, compared with a 24% decline in those districts for the industry as a whole.

Sherman, a privately held enterprise, through its subsidiaries filed 15,420 more debt-collection lawsuits in those districts than during the year-earlier period. Those courts serve 13% of the U.S. population.

In doing so, Sherman has cemented its reputation as a maverick in the industry. Since founding the company two decades ago, Sherman Chief Executive Ben Navarro has helped transform the once small and fragmented business of collecting old credit-card debt into a multibillion-dollar industry dominated by huge firms.

And while many of his competitors have retrenched during economic downturns, Mr. Navarro has capitalized on them, expanding in the wake of the 2008 financial crisis and bucking industry trends during Covid.

During the pandemic, most of Sherman's largest rivals filed fewer new lawsuits, citing borrower hardship. Two publicly traded competitors, **PRA Group**  and **Encore Capital Group**, ECPG 0.52% ▲ both sued fewer people in 2020 than in 2019, and they limited new collection efforts. California-based

<u>Oportun Financial</u> Corp.  OPRT **-0.47%** ▼ suspended new lawsuit filings, dismissed pending cases and capped the interest rate on its loans.

### Easing Off

After Covid lockdowns began, many courts closed and debt collectors scaled back their collection efforts.

**Change in 2020 debt-collection lawsuit filings**



Source: Wall Street Journal analysis of debt-collection lawsuits filed in New York State Supreme Court, Harris County, Texas, Justice of the Peace Court, Maryland circuit and district courts, Missouri circuit courts and Wisconsin circuit courts

A spokesman for Sherman and Mr. Navarro, its majority owner, said that while the company has filed more lawsuits during the pandemic than a year earlier, it also owned more debt during that period. In the last nine months of 2020, the spokesman said, Sherman's debt-collection arm, Resurgent, sued a smaller percentage of its debtors than in prior years. The company declined to disclose specifics about the amount of additional debt it holds or the percentage of borrowers it sued.

The Sherman spokesman, David Wells, said the company's pandemic response shouldn't be measured by the number of lawsuits it filed. "In addition to drastically reducing its suit filing rate, Resurgent implemented many consumer-friendly policies during the pandemic."

Suing people who were struggling even before the pandemic may turn out to be a canny move. Government stimulus, breaks on rent and lockdown-driven spending cuts mean many people without much savings now have some cash in the bank. Courts can order banks to take such savings from debtors' accounts and give the money to creditors. Because Sherman discloses little about its financial results or operations, it couldn't be determined how profitable its approach has been.

Sherman, based in Charleston, S.C., got its start buying distressed debts from other firms. Initially, its competitors were small and unable to handle large volumes, while Sherman, backed by big investors, bought large portfolios, using computer systems that made analyzing old loans and collecting on them more

efficient and profitable. Over the years, Sherman diversified. It bought a bank that issues high-interest credit cards, often to consumers with weak credit. If customers default, other Sherman entities try to collect.



Sherman CEO Ben Navarro, pictured at a sporting event in 2019, started the company in 1998.

PHOTO: TIM CLAYTON/CORBIS/GETTY IMAGES

Mr. Navarro, Sherman's 58-year-old founder, has made a fortune in the business. He and his partners have created a global investment firm whose holdings have included an office park in Ireland, a big chunk of the South Amboy, N.J., waterfront, a window-shade maker and fintech companies that lend money at high interest rates. Many of those holdings are controlled by shell companies.

In 2018, Mr. Navarro made an unsuccessful bid to buy the Carolina Panthers football team, which sold for $2.275 billion. More recently, Mr. Navarro's family office invested $250 million in a private-equity fund focused on oil and gas.

Mr. Navarro, who declined to comment for this article, rarely speaks publicly about the collections business. "I've spent a career trying to be low key and trying to have our company be as low key as possible," he told a group of students three years ago at his alma mater, the University of Rhode Island, according to a video recorded by one attendee.

When consumers stop paying off their cards, the banks that issue them usually send letters and make phone calls attempting to collect. They often give up after 180 days, booking the bad debt as a loss. Then they sell it, often for just a few cents per dollar of debt, leaving the new owner to try to collect.

4/11/2021

Case 1-21-40301-ess    Doc 43-2    Filed 06/15/21    Entered 06/15/21 16:03:09

Most Big Debt Collectors Backed Off During the Pandemic. One Pressed Ahead. - WSJ

## Debt Boom

As credit-card debt has risen in recent years, so have charge-offs by banks

**Consumer credit-card debt**



**Credit-card debt charged off by banks**



Sources: New York Federal Reserve's Consumer Credit Panel (debt); Federal Reserve (debt charged off)

Unlike with mortgages or car loans, there often is no collateral to seize with a credit-card loan. Collectors call and send letters, hoping borrowers agree to pay a portion of their debt. Lawsuits are the last and most expensive resort.

The number of debt-collection lawsuits filed across the country doubled between 1993 and 2013, according to the Pew Charitable Trusts, and debt claims are now the most common type of civil case in nine of 12 states examined by Pew. The cases frequently end in default judgments letting debt collectors garnish wages or bank accounts to satisfy the debt, plus interest and fees.

Among the people Sherman sued during the pandemic was Shalinda McGregor, 30 years old, who owes $1,372.51 in credit-card debt. She said she had been unable to pay the debt since she quit nursing school and moved to rural Wolcott, N.Y., to care for her father after he had a heart attack.

For the past few years, she worked in an apple-processing plant six nights a week. In the summer when the plant slows, she collects unemployment. She said she defaulted because she could never make enough money to pay off her debts.

Sherman sues only a small percentage of customers who don't resolve their debts during collections efforts, the spokesman said, and offers payment plans or partial

debt forgiveness before suing.

Ms. McGregor said she got letters seeking repayment for years before she was sued, which she ignored, assuming they were from scammers. She hasn't responded to Sherman's lawsuit and said she has been out of work since catching Covid in January and intends to file for bankruptcy because of the credit-card debt.

Sherman's lawsuit against Ms. McGregor, filed on Sept. 3, was one of the roughly one million debt-collection lawsuits in 2019 and 2020 in the five jurisdictions analyzed by the Journal—New York, Wisconsin, Maryland, Missouri and Harris County, Texas, which includes Houston.

Of the top 10 filers of debt-collection lawsuits in those jurisdictions in 2020, eight, including well-known lenders such as Bank of America Corp. BAC 0.73% ▲ and Capital One Financial Corp. COF 1.08% ▲ , filed the same amount or fewer lawsuits during the pandemic than a year earlier. Citigroup Inc. C 0.12% ▲ notched an increase.

"The modest, single-digit year-over-year percentage increase in collections litigation nationally is largely the result of cases that predate the pandemic by months," a Citigroup spokeswoman said.

In 2020, Sherman-owned companies filed 12% of the debt lawsuits in those jurisdictions, up from 6% a year earlier.

Sherman's spokesman said the company bought 60% more debt in 2019 than in the prior year, so that when the pandemic hit, it held more debts over which to potentially sue people. Nationally, he said, Sherman spent millions of dollars less on lawsuit fees during 2020 than its two largest publicly traded competitors, which he said indicated Sherman filed fewer lawsuits than those rivals countrywide. None of the companies disclose how many suits they file.

SHARE YOUR THOUGHTS

*Have you had any experience with debt-collection companies? Join the conversation below.*

Sherman has previously succeeded amid times of economic hardship by harnessing technology and data in its collection efforts. In 2009, Sherman's revenue hit $1.2 billion, allowing Mr. Navarro and his partners to buy out the company's longtime investors, two insurance companies that needed to boost capital, and take the company private.

"We not just survived, but thrived," Mr. Navarro later said to the Rhode Island college students. He played a clip from the film "It's A Wonderful Life" in which the customers of George Bailey's building-and-loan company demand to withdraw their money amid a bank run as banker Henry Potter tries to drive it out of business.

"The only bad news," Mr. Navarro told the students, "is that I was Potter. I'm not sure what that says about me, but anyway we were able to make the most of the

financial crisis."

The Sherman spokesman said Mr. Navarro's whole speech was intended to show students how they could succeed "by focusing on humility, kindness and preparation."



In 2018, Mr. Navarro made an unsuccessful bid to buy the Carolina Panthers football team.
PHOTO: BRIAN BLANCO/ASSOCIATED PRESS

Mr. Navarro told the students he started Sherman, which he named after his dog, in 1998 in a one-bedroom apartment with a fax machine and newborn baby. He had been co-head of mortgage sales and trading at Citigroup when he decided that no one had brought basic technology to the business of collecting bad consumer loans.

"Collections were done on pencil and paper and note cards, and physical note card files in much of the industry," said Tim Grant, an early employee who would become a senior executive before leaving Sherman a few years ago. Big credit-card issuers sold old debts for pennies on the dollar into an informal marketplace full of brokers—a business that has been plagued by consumer complaints and regulatory scrutiny.

"Sherman was most definitely trying very, very hard to be a white knight in what had been a somewhat dirty business," Mr. Grant said.

Mr. Navarro wanted to use computer programs to estimate the profitability of debt portfolios. He assembled a 100-person information-technology staff, hired people with front-office experience and integrated the company's various business units so they could handle bigger volumes and different types of debt, according to a 2006 report to investors.

To get Sherman off the ground, Mr. Navarro sold 91% of the firm for $40 million to two insurance firms. "They had phenomenal analytics," said Daniel Gross, the former CEO of one of the firms, Enhance Financial Services Inc.

Sherman grew quickly as wages for many working and middle-class consumers stagnated and they turned to more widely available credit. Between 2001 and 2020, consumer credit-card debt grew by 37% to $819 billion, according to New York Fed data, and credit-card debt sold by banks increased by 87%, Federal Reserve data show.

4/11/2021       Most Big Debt Collectors Backed Off During the Pandemic. One Pressed Ahead. - WSJ

Case 1-21-40301-ess    Doc 43-2    Filed 06/15/21    Entered 06/15/21 16:03:09

In some cases, Sherman admitted to suing the wrong people. Other times, it attempted to collect debts so old they were no longer legally collectible, court records show.

The company said identity theft can lead to suing the wrong people, and Resurgent takes steps to detect and remedy cases of mistaken identity, the spokesman said.

**Debt-buying industry revenue**



Note: 2019-23 revenues are forecasts.
Source: Kaulkin Ginsburg

Between Sherman's inception and September 2006, its companies recovered more than $3.8 billion in old debts, it said in a 2006 presentation. Between 2005 and 2009, before the company was taken private and data became unavailable, Sherman was the nation's biggest buyer of defaulted credit-card debt, according to the Nilson Report, a credit-industry analysis firm.

In 2005, Sherman bought a small bank, rebranded it Credit One, and increased the business from $647 million in outstanding credit-card receivables in 2006 to $6.81 billion in 2020, the most recent reported figure, according to Nilson Report. Credit One was the seventh-largest credit-card provider in 2020, ranked by active accounts.

Between 2011 and 2020, the bank was the subject of 13,500 consumer complaints filed to the federal Consumer Financial Protection Bureau over late fees and delays in processing payments that generate late fees, according to a Journal analysis of federal records made public via a public-records request.

Credit One received the most complaints of any firm with less than $10 billion in assets supervised by the Office of the Comptroller of the Currency, a federal banking regulator, and the ninth-most complaints about financial products of the largest credit-card issuers ranked by outstanding loans.

"The level of complaints is representative of an institution of our size," Sherman's spokesman said. "We work hard to address all customer complaints, and our goal is to have as few as possible."

Since Mr. Navarro's group took full control of the company, there has been little publicly available information about Sherman's activities. Court records, some of the only public documents, show that Sherman filed thousands of lawsuits against borrowers, leading to some problems with authorities.

4/11/2021         Most Big Debt Collectors Backed Off During the Pandemic. One Pressed Ahead. - WSJ

Case 1-21-40301-ess     Doc 43-2     Filed 06/15/21     Entered 06/15/21 16:03:09



Sherman's Credit One, an auto racing sponsor, was the seventh-largest credit-card provider in 2020, ranked by active accounts.

**PHOTO:** BRIAN LAWDERMILK/GETTY IMAGES

In 2011, Maryland sued Sherman's primary debt-collection subsidiaries, alleging they flooded courts with cases but were unlicensed to collect there. Sherman suits "contained false, deceptive, or deficient complaints and supporting affidavits," state regulators wrote. In a 2012 settlement, without admitting wrongdoing, Sherman paid a $1 million penalty and gave credits worth about $3.8 million to Maryland consumers.

In 2014, the New York attorney general later said, Sherman collected from at least 400 borrowers whose debts weren't legally collectible. Sherman paid a $175,000 fine for those violations. In September, the New Mexico attorney general sued Sherman, alleging it undertook illegal collections practices. The Sherman spokesman declined to comment because the lawsuit is pending.

The spokesman said the CFPB has never taken an enforcement action relating to debt collection against Sherman's debt-collection companies, and in 2020 those companies underwent 54 regularly scheduled regulatory examinations and a Covid-specific assessment with zero violations.

Laws regulating collection efforts vary. Some states, including Kentucky, allow debt collectors to seize nearly everything a debtor owns. Last year, Carol Bradley, 78-year-old retiree who lives on the outskirts of Louisville, filed for bankruptcy after a Sherman subsidiary emptied her bank account to collect on a 15-year-old debt.

Sherman had acquired a $12,008 debt that Ms. Bradley had defaulted on in 2006. Sherman later sued Ms. Bradley, and a judge in 2011 awarded Sherman a default judgment, allowing it to force her bank to pull money from her account.

Sherman didn't act on that judgment until last year, the Sherman spokesman said, when the company's computer models determined Ms. Bradley had money to pay. In May, Sherman used a garnishment order to compel her bank to transfer her balance of $6,770.78 to Sherman.

Ms. Bradley, who declined to comment, lives on a fixed income, court records show. Bankruptcy laws enable debtors to seek the return of garnishments filed

immediately before a bankruptcy. Ms. Bradley did so, and Sherman settled the
matter by returning the money.

*—Lisa Schwartz contributed to this article.*

**Write to** Shane Shifflett at Shane.Shifflett@wsj.com and Justin Scheck at
justin.scheck@wsj.com

*Appeared in the April 8, 2021, print edition as 'Big Debt Collector Stayed Tough Despite Pandemic.'*

Copyright © 2021 Dow Jones & Company, Inc. All Rights Reserved

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit https://www.djreprints.com.

EXHIBIT K

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re:                                          Chapter 7

      QB WASH LLC                          Case No.: 21-40301-ess
      *dba* BLVD AUTO SPA,

                         Debtor.
---------------------------------------------------------x

## STIPULATION AND ORDER

       This Stipulation and Order (the "Stipulation") is made by and between David J. Doyaga, Sr., in his capacity as the duly appointed, qualified and serving Chapter 7 Trustee (the "Trustee") of the bankruptcy estate (the "Estate") of QB Wash LLC *dba* Blvd Auto Spa (the "Debtor") and Wash Funding LLC ("WF") (the Trustee and WF, collectively referred to as the "Parties" and each individually as the "Party"). The Trustee, by and through his undersigned counsel, and WF, by and through its undersigned counsel, agree to the facts and terms of the Stipulation as follows:

## RECITALS

       **WHEREAS**, on February 8, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7, Title 11, United States Code (the "Bankruptcy Code") in the Eastern District of New York (the "Bankruptcy Court"); and

       **WHEREAS**, David J. Doyaga, Sr. was appointed interim Chapter 7 Trustee of the Debtor's Estate and, by operation of law, became the permanent Chapter 7 Trustee of the Debtor's Estate; and

       **WHEREAS**, prior to the Petition Date, the Debtor operated a car wash and lube and was the lessee of the non-residential real property known as 138-77 Queens Boulevard and 138-11 87th Avenue, Jamaica, New York 11435 (the "Premises"); and

       **WHEREAS**, on June 29, 2021, approximately seven (7) months prior to the Petition Date, WF recorded a UCC-1 (the "UCC") with the New York State Department of State, File No. 202006298276994, asserting a lien on all items of personal property, fixtures and equipment located on, related to, or used in connection with car wash and lube located at the Premises (the "Personal Property"); and

       **WHEREAS**, the Trustee identified that WF may be an insider of the Debtor; and

       **WHEREAS**, the Estate has a cause of action to, among other things, avoid the UCC and relegate WF's alleged lien as wholly unsecured (the "Cause of Action"); and

1

**WHEREAS**, the Parties have agreed that in an effort to avoid the costs and expenses associated with litigating the Cause of Action; it is therefore

**AGREED BY AND BETWEEN THE PARTIES AND SO ORDERED THAT:**

1.      The UCC security interest is hereby set aside as a preference. WF irrevocably consents that it does not have a lien or security interest of any kind against any Personal Property in connection with the car wash and lube located at the Premises and in connection with the Debtor, and the security interest is preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code.

2.      WF irrevocably consents that any Personal Property which WF had an alleged lien and or security interest in is property of the Debtor's Estate and will not contest the ownership of that property.

3.      The Trustee is authorized to file a UCC-3 termination.

4.      The Trustee reserves all rights as to any causes of action and or any Chapter 5 recoveries, and the Trustee reserves his rights to contest any proof of claim filed by, or on behalf of, WF.

5.      This Stipulation represents the entirety of the understanding by and between the Parties.

6.      The Parties hereby agree that each of them has had a full opportunity to participate in the drafting of this Stipulation by and through their respective counsel and, accordingly, any claimed ambiguity shall be construed neither for nor against either of the Parties.

7.      This Stipulation shall be binding upon and inure to the benefit of the Parties hereto, and their respective executors, heirs, successors and assigns.

8.      The person executing this Stipulation on behalf of each respective Party warrants and represents that he is authorized and empowered to execute and deliver this Stipulation on behalf of such Party.

9.      The Parties to this Stipulation agree to bear their own costs and expenses, including attorneys' fees, arising out of this Stipulation.

10.      This Stipulation is subject to the approval of the Bankruptcy Court.

11.      This Stipulation shall be governed by the laws of the State of New York, the Bankruptcy Code and the Bankruptcy Rules.

2

12.     The Stipulation may be executed in counterparts and a signature by facsimile or electronic signature shall be sufficient to bind the Parties hereto.

13.     The Bankruptcy Court ~~shall~~ ***may*** retain jurisdiction over this matter to determine any dispute that may arise hereunder.

Dated: May 28, 2021                         Dated: May 27, 2021
      Huntington, New York                         New York, New York

**Law Offices of Avrum J. Rosen, PLLC**     **McDermott Will & Emery**

By:     */s/ Avrum J. Rosen*                 By:     */s/ Timothy W. Walsh*
      Avrum J. Rosen                              Timothy W. Walsh

*Attorneys for David J. Doyaga, Sr.,*        *Attorneys for Wash Funding LLC*
*Chapter 7 Trustee of the Estate of*
*QB Wash LLC dba Blvd Auto Spa*

38 New Street                                340 Madison Avenue
Huntington, New York 11743                   New York, NY 10173
Tel: (631) 423-8527                          Tel: (212) 547-5873
arosen@ajrlawny.com                          twwalsh@mwe.com

***IT IS SO ORDERED.***



**Dated: Brooklyn, New York**                     **Elizabeth S. Stong**
**June 2, 2021**                                  **United States Bankruptcy Judge**

3