Hearing Date and Time: July 27, 2021 at 10:30 a.m.

WINDELS MARX LANE & MITTENDORF, LLP
*Attorneys for 138-77 Queens Blvd LLC*
156 West 56th Street
New York, New York 10019
Telephone (212) 237-1000
Attorney Appearing: Leslie Barr (lbarr@windelsmarx.com)

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>QB WASH LLC,<br>  *d/b/a* Blvd Auto Spa,<br><br>                              Debtor. | Chapter 7<br><br>Case No. 1-21-40301-ess |

**138-77 QUEENS BLVD LLC'S REPLY TO OBJECTIONS TO ITS
MOTION FOR AN ORDER PURSUANT TO RULE 2004 OF THE
FEDERAL RULES OF BANKRUPTCY PROCEDURE DIRECTING THE
PRODUCTION OF DOCUMENTS BY AND ORAL EXAMINATION OF
THE DEBTOR'S PRINCIPAL AND CERTAIN RELATED PARTIES
<u>AND THE PRODUCTION OF DOCUMENTS BY THE DEBTOR</u>**

**TO THE HONORBALE ELIZABETH S. STONG,**
**UNITED STATES BANKRUPTCY JUDGE:**

138-77 Queens Blvd LLC, by and through its attorneys, Windels Marx Lane & Mittendorf, LLP, respectfully submits this reply to the Objections and Statements in Response (the "***Objections***") of Zachary Silver, Scott Silver and Wash Funding LLC (collectively, the "***Silvers***") ("***Silver Obj.***," Doc. 49) and the Debtor, QB Wash LLC ("***Debtor Obj.***," Doc. 50), which were submitted in response to the Motion of 138-77 Queens Blvd LLC for an Order Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure Directing the Production of Documents by and Oral Examination of the Debtor's Principal and Certain Related Parties and the Production of Documents by the Debtor (the "***Motion***," Doc. 43); and states as follows:[1]

---

[1] Capitalized terms not defined herein have the respective meanings ascribed in the Motion.

{11945716:2}

## INTRODUCTION

1.      Presented with detailed allegations concerning the diversion of Debtor assets, an unexplained operating deficit of approximately $200,000 in the year leading up to the Debtor's bankruptcy filing, and unaccounted-for cash receipts in excess of $100,000, the Silvers make no attempt to rebut the facts or financial analyses set forth by Landlord. Indeed, they do not offer even a pro forma denial that the missing funds were paid to them. Rather, they argue that the Court should leave discovery to the Chapter 7 Trustee, and assert that Landlord's motion should be denied because it is motivated by "hostility" and constitutes "harassment." Silver Obj. at 2.

2.      As shown below, however, their arguments are premised on assertions that are uniformly untrue, and their contention that disclosure should be left to the Chapter 7 Trustee directly conflicts with the express language of Rule 2004, as well as with the cases cited by Landlord and the multiple additional cases cited by the Silvers themselves granting creditors' motions for examinations under Rule 2004.

## DISCUSSION

**A.    The Silvers' Allegation of a History of Animosity with Landlord Is Groundless and the Narrowly-Drawn Nature of Landlord's Discovery Requests Refutes the Contention that the Motion Is Intended to Harass**

3.      The Silvers' contention that the Motion is "the continuation of the needless and unproductive hostile dispute between the Debtor and Landlord," Silver Obj. at 2, is refuted by the record. They parties' discussions before Landlord commenced its state court eviction case in September 2020 were conducted in substantial part by email and the tenor of their discussions is reflected in the measured and civil tone of their correspondence over the summer of 2020. *See* Exhibit L.[2] After litigation commenced, communications occurred through counsel and were likewise professional and free from rancor. *See* Exhibit M.

---

[2] Exhibits are numbered consecutively to those annexed to the Motion.

4.  The limited, targeted scope of the discovery Landlord seeks further definitively refutes the contention that its purpose is to harass. The majority of Landlord's requests (Nos. 4, 5, 6, 7, 8, 9 and 10) seek data files or specifically-identified documents that can be obtained from the Debtor or its vendors with minimal effort. Requests Nos. 1 and 2 likewise seek a limited number of specified documents directly related to Wash Funding's claim against the Estate. Emails and other communications are sought only (1) with respect to the roughly 13-month period before the bankruptcy filing, between Zachary and Scott (Request No. 3), and (2) relating to Wash Funding's claim (Request No. 1(f)). These requests are amply warranted by the evidence presented in the Motion regarding a number of related-party transactions, Motion ¶¶ 24-38, and by Zachary's asserted lack of recollection regarding the relevant events. *See* Motion Exhibit C, at 8-9, 11.

5.  Far from placing a disproportionate burden on the Silvers, Landlord's proposed Order, Motion Exhibit 2, imposes a substantial affirmative obligation on *Landlord*, to "conduct a thorough review of the documents produced pursuant to this Order and report its findings to the Chapter 7 Trustee."

6.  The time and effort Landlord devoted to the detailed financial analyses set forth in the Motion further supports the conclusion that Landlord's motive is to ensure a full accounting for funds diverted from the Debtor, rather than to impose an unwarranted burden on any party.

7.  As Landlord previously explained in detail, Motion ¶ 57, the disclosure sought is also tailored to examining the specific issues raised in the Motion.

8.  The Silvers contend that the Court should nonetheless infer a motive to harass because "it is quite unlikely that the Landlord will see a distribution in this small asset case considering administrative expenses and the existence of a large, priority tax claim." Silver Obj. at 2.

9. This assertion is unfounded, as indicated by the Chapter 7 Trustee's recent determination that the discovery of assets warranted issuance of a Notice of Discovery of Assets and setting of a claim bar date (Doc. 52).

10. While the Debtor's Petition & Schedules, Motion Exhibit A, Sch. E/F, show a priority unsecured claim for $163,276 by the New York State Department of Taxation and Finance (the "***NYS Tax Department***"), no proof of claim has been filed and the nature and status of this claim remain to be determined.

11. In addition, the Debtor's principal, Zachary, appears likely to be held personally liable on this claim. The two principal types of taxes relevant to the Debtor that are collected by the NYS Tax Department are (1) sales and use tax, and (2) employee compensation withholding. An employer's responsible officers are personally liable for nonpayment of both. *See Menik v. Roth*, 280 A.D.2d 702, 702, 720 N.Y.S.2d 265, 266 (3d Dep't 2001) (affirming ruling imposing personal liability on corporate officer for nonpayment of employee withholding taxes pursuant to N.Y. Tax Law § 685(g)); *Abrams v. Tax Appeals Tribunal*, 216 A.D.2d 684, 685, 627 N.Y.S.2d 860, 861 (3d Dep't 1995) (affirming ruling imposing personal liability on corporate officer for sales tax pursuant to N.Y. Tax Law § 1133(a)).

12. The existence, amount, and ultimate extent of the Debtor's liability for the NYS Tax Department claim is thus highly uncertain, and Landlord believes that the sums recoverable by the Estate will substantially exceed the reasonable costs of administration in this case.

**B.    Rule 2004 by Its Terms Authorizes Examinations by Creditors and Such Examinations Are Particularly Warranted in Small Asset Cases Such as This**

13. As Landlord previously noted, Motion ¶ 50, Rule 2004 expressly authorizes examinations by "any party in interest," which has consistently been interpreted to include creditors. The Objections do not dispute this, and in the course of discussing the applicable law, the Silver Objection (**¶¶ 10-11**) actually cites multiple additional cases granting creditors'

{11945716:2}   4

motions for Rule 2004 examinations, including *In re Express One International, Inc.*, 217 B.R. 215 (Bankr. E.D. Tex. 1998); *In re Texaco Inc.*, 79 B.R. 551 (Bankr. S.D.N.Y. 1987); *In re Mittco, Inc.*, 44 B.R. 35 (Bankr. E.D. Wis. 1984); and *In re Cinderella Clothing Industries, Inc.*, 93 B.R. 373 (Bankr. E.D. Pa. 1988).

14. Neither the Silvers nor the Debtor point to *any* case in which a court has even suggested that a creditor examination should be denied in deference to a Chapter 7 trustee, and the argument has especially little merit when asserted, as here, by the targets of the examination, rather than the Chapter 7 Trustee himself.

15. Examinations by creditors are particularly warranted in "small asset" cases like this one. In small asset cases, a responsible trustee prudently limits the scope of his or her investigation to avoid incurring administrative expenses disproportionate to the funds that may ultimately be recovered. In such cases, a Court should therefore be especially receptive to offers by creditors to incur all the costs associated with an investigation, particularly when a creditor agrees, as Landlord has here, to forego any potential claim for reimbursement under Section 503(b) of the Bankruptcy Code.

16. The absence of any allegation in the Objections that the documents requested by the Motion duplicate disclosure already made to the Chapter 7 Trustee further establishes the need to grant the Motion.

C. **The Silvers' Allegations that Landlord Has Received a "Windfall" and Treated the Debtor Unfairly Are Irrelevant and Wholly Untrue**

17. The Silvers also make other allegations that are entirely untrue and irresponsible, as well as irrelevant to the Motion.

18. First, they allege that Landlord "has received an unbelievable windfall as a result of the Debtor's demise" because the new tenant in the Business Premises has apparently listed the business for sale. Silver Obj. at 3. In fact, if the new tenant does sell its business, Landlord

will receive no proceeds at all from the sale. Far from profiting from the Debtor's failure, Landlord has to date lost more than $340,000 in rental income, incurred over $85,000 in legal fees, paid more than $26,000 to settle bills for the Debtor's water and sewer use, and spent approximately $25,000 remediating an oil spill on the Business Premises discovered after the Debtor vacated.

19. The Silvers also allege that Landlord contributed to the Debtor's failure by refusing to grant a rent reduction. Silver Obj. at 2, ¶ 15. They do not tell the Court that the monthly rent payable at the time of the Debtor's bankruptcy filing was the fair market rent set last August, in the midst of the pandemic, pursuant to the rent reset provision in the Lease by a prominent MAI appraiser *selected by the Silvers*.

### D. The Silvers' Objection Further Demonstrates the Need for the Disclosure Landlord Seeks

20. The omissions in the Silvers' Objection underscore the need for the disclosure Landlord seeks.

21. With respect to Wash Funding, they assert it was formed "for the purpose of receiving, holding and enforcing" loans they had previously made to the Debtor. Silver Obj. ¶ 5. They do not explain, however, why there was any need to form a new entity given that they controlled the borrower. They also fail to explain what led them to falsely identify Wash Funding as an unrelated party in the Debtor's Petition & Schedules, filed in this Court just months after Wash Funding was formed.

22. The Silvers also make no effort to rebut the evidence in the record that Wash Funding received payments from the Debtor while it was insolvent, *see* Motion ¶ 32. They repeatedly refer to losses of "around $2 million," Silver Obj. at 3, ¶¶ 8, 20, but the total reported value of their notes was over $2,140,000, *see* Silver Obj. ¶¶ 3, 4, raising the question of how much Wash Funding received back from the Debtor, and when those payments occurred.

23. The Silvers' Objection is also silent on the central questions at issue here: the Debtor's unexplained 2020 operating deficit and the use of the cash generated by the Debtor while insolvent. As the Debtor's principal, Zachary must know the source of the Debtor's $200,000 operating deficit (Motion ¶¶ 43-45 and Exhibit G) and how the Debtor's cash revenue, potentially exceeding $200,000 during the period following the Debtor's Lease default, was deployed (Motion ¶¶ 39-41). The Silvers have chosen, however, to wholly ignore both issues.

24. Instead, the Silvers dilate on the money they lost and the other parties they say are to blame. The Silvers' litigating position suggests that they believe that their own losses entitled them to extract value from the Debtor on the eve of its demise. Zachary has already admitted this occurred through payments by the Debtor to him, his family, and at least one third party for expenses unrelated to the Debtor's business. Motion Exhibit C at 9, 10, and 14.

25. There is no question that after the rent reset was determined in Landlord's favor in August 2020, the Debtor had no path to viability, yet the Silvers chose to retain possession of the Business Premises, withhold all payments for rent, property taxes, insurance and water, force Landlord to sue for eviction, and draw ongoing payments from the Debtor while the litigation proceeded. Under these circumstances, the Silvers should be required to make the disclosure needed to achieve a full accounting for all funds that the Estate is entitled to recover.

**WHEREFORE**, Landlord requests that the Court grant the Motion in its entirety and enter an Order substantially in the form attached as **Exhibit 2** to the Motion, together with such other and further relief as is just.

Dated: New York, New York
       July 22, 2021

Respectfully submitted,

WINDELS MARX LANE & MITTENDORF, LLP
*Counsel for 138-77 Queens Blvd LLC*

By: */s/ Leslie S. Barr*
Leslie S. Barr (lbarr@windelsmarx.com)
156 West 56th Street
New York, New York 10019
Tel. (212) 237-1000 / Fax. (212) 262-1215