**Law Offices of Avrum J. Rosen, PLLC**　　　　　　　　　　**Hearing Date: July 27, 2021**
*Attorneys for David J. Doyaga, Sr., Chapter 7 Trustee*　　　**Hearing Time: 10:30 a.m.**
38 New Street
Huntington, New York 11743
(631) 423-8527
Avrum J. Rosen, Esq.
Alex E. Tsionis, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re:                                                                          Chapter 7

    QB WASH LLC                                                Case No.: 21-40301-ess
    *dba* BLVD AUTO SPA,

                                Debtor.
---------------------------------------------------------x

## CHAPTER 7 TRUSTEE'S RESPONSE TO THE
## RULE 2004 APPLICATION OF 138-77 QUEENS BLVD LLC

**TO:  THE HONORABLE ELIZABETH S. STONG,
       UNITED STATES BANKRUPTCY JUDGE:**

David J. Doyaga, Sr., the Chapter 7 the Trustee (the "Trustee") of the Estate of QB Wash LLC *dba* Blvd Auto Spa (the "Debtor"), by and through his attorneys, the Law Offices of Avrum J. Rosen, PLLC, respectfully submits this as and for his response (the "Response") to the *Motion of 138-77 Queens Blvd LLC for and Order Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure Directing the Production of Documents by and Oral Examination of the Debtor's Principal and Certain Related Parties and the Production of Documents by the Debtor* [Dkt. No. 43] (the "Motion"), and respectfully states as follows:

## RESPONSE

1.      On February 8, 2021, the Debtor commenced a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code.

2.      David J. Doyaga, Sr. was appointed the interim Chapter 7 Trustee of the Debtor's bankruptcy estate and, by operation of law, became the permanent Chapter 7 Trustee of the Debtor's bankruptcy estate.

3.      The Debtor is a corporate entity and is represented by counsel.

4.      The Trustee and his counsel have engaged in lengthy discussions with 138-77 Queens Blvd LLC (the "Landlord") and the objectants to the Motion. There has been much speculation as to what the Trustee has done, will do and the need for discovery to assist (or oppose) actions the Trustee may take. The Trustee believes the Court will want to hear from him on these matters and so files this Response.

5.      By way of status, the following is what the Trustee and his counsel have done so far in this case.  An initial investigation looked into whether or not the Debtor's lease with the Landlord had been validly terminated.  Those investigations resulted in a stipulation surrendering the rights under the lease, but expressly preserving the rights to any personal property of the Debtor. [Dkt. No. 19].

6.      That was because the investigation at the very beginning of the case raised issues about the validity of the security interest in the Debtor's assets.  It was determined that two separate family trusts (the "Trusts"), which are insiders of the Debtor, made loans to the Debtor, but had never filed security interests. Those family Trusts then transferred those obligations to Wash Funding LLC ("Wash Funding"), which is also an insider of the Debtor, and which perfected a security interest against the Debtor's assets during the time when the litigation with the Landlord was pending.  Further research was conducted that disclosed that the Trusts were the beneficial owners of Wash Funding.

7.      The undersigned reached out to counsel for the Debtor to get multiple documents, including loan documents, bank statements, tax returns and litigation files. Those documents were all produced expeditiously and without the need for court intervention. Counsel for Wash Funding was also contacted and documents were also voluntarily produced. Further requests were made and when present counsel for the Trust and Wash Funding came on board, everything that was requested was turned over within days.

8.      It was apparent that Wash Funding had not advanced any new funds to the Debtor when the loans were assigned and that there was no consideration for the security interest. Again, without the need for litigation, Wash Funding agreed that the security interest was an insider preference and stipulated to avoid that interest and for it to be preserved for the benefit to the estate. [Dkt. No. 40]. That issue will be discussed further on in this Response.

9.      After a review of the bank statements by this firm, a 341 meeting was held. That transcript was quoted extensively in the moving papers. The questions asked demonstrate that information had been provided and the questions were focused on the details of the transactions. The Debtor did testify that there were cash payments that were not deposited. But the testimony and the bank records also disclosed that there were cash payments that were deposited. Attempting to trace the use of cash in this type of business (a carwash and lube) is extremely difficult and extremely expensive.

10.     A further review of the litigation files and the bank statements raised issues about the payments and services of Cermele & Wood LLP ("Cermele & Wood"), the Debtor's state court litigation counsel. The Court will recall the litigation between the Trustee and Cermele & Wood regarding the Trustee's motion seeking a 2004 examination of Cermele & Wood. [Dkt. Nos. 21, 24 and 25].

11. When Cermele & Wood's bills were produced, the Trustee discovered that the Debtor paid for work done to acquire real estate that owned a car wash in Danbury Connecticut, which was unrelated to the Debtor and which the Debtor received no consideration. This transaction took place while the litigation with the Landlord was ongoing. The sale closed right before the bankruptcy filing. This obviously raised concerns and the Trustee had his counsel obtain all of the documents and financial documents evidencing the sources of the funds for the closing. The Trustee determined that all the funds used to purchase the property came from the Trusts, but that $7,840.00 was paid to Cermele & Wood by the Debtor on behalf of the Trusts. In short, there was a lot of smoke, but very little fire.

12. From the other records produced, and they were extensive and complete, it was clear that the Trusts did advance the sums set forth in the promissory notes. The Trustee received a year-by-year break down of all of the payments made on the loan which came to a little under $120,000.00 in total payments. There was no evidence that there were any cash payments to the Trusts or to Wash Funding. Within the one-year preference period, payments of $41,214.00 were made to either the Trusts and/or Wash Funding. The Trustee asserted that most of those were recoverable as preferences. The Trustee also asserted that there was an argument that the entirety of the loans made by the Trusts was for the benefit of equity and that once the Debtor was insolvent, the payments became recoverable.

13. Counsel for the Trusts and the Trustee have been negotiating these matters and are in the midst of papering a settlement wherein the Trusts and/or Wash Funding will pay the Trustee the sum of $82,740.00 to settle these claims, including the funds advanced to Cermele & Wood. The Trustee believes that this settlement is far above the range of reasonableness on these matters.

14. Paradoxically, from the Trustee's perspective, the remaining claims in the case are against the Landlord. Under the stipulation with Wash Funding, which avoided the security interest in the Debtor's assets, the estate now holds a secured position in the Debtor's personalty. The undersigned negotiated with the Landlord's counsel for a sale of that personalty after having the Trustee's auctioneer evaluate it at a value of approximately $35,000.00 to $60,000.00. An agreement was reached to sell the personal property, in place, for $25,000.00, subject to higher and better offers. This firm drafted the settlement agreement. Then-counsel for the Landlord then approached this firm about getting the use of the personal property during the hearing process. To cover the risk and expense of accommodating that request an additional $7,500.00 was discussed.

15. The principal of the Landlord (who is an attorney) then decided that a provision in the unrecorded lease that gave the Landlord a right to keep any personal property somehow had priority over a recorded security interest. Trustee's counsel advised then-counsel for the Landlord that it was improper to renege on a settlement, and that the Landlord would be converting estate property. Landlord's counsel was then replaced with present counsel and those issues were again raised. The allegations in the opposition to the Motion that the property has been re-leased to the prior owner (who did dramatically reduce its PMSI after allegations of fraudulent inducement were raised) and was now marketing the location together with the estate's personal property, is of concern and the Trustee will be taking action on those issues.

16. All of the counsel in this case are experienced and extremely competent (if not confident) and the Trustee hopes that after reading what the Trustee has obtained in results with a minimum of litigation, the fact that there are large scheduled priority tax claims and the increased costs of litigation, that they will stand down in these proceedings. The litigation between the Landlord and the Debtor was vitriolic and is clearly personal in nature. The Trustee hopes that the

5

recoveries in this case will not be consumed by needles litigation pursued for collateral litigation strategies.

Dated: July 23, 2021　　　　　　　　　　　　　　Respectfully submitted,
　　　　Huntington, New York

　　　　　　　　　　　　　　　　　　　　　**Law Offices of Avrum J. Rosen, PLLC**
　　　　　　　　　　　　　　　　　　　　　*Counsel to David J. Doyaga, Sr.*
　　　　　　　　　　　　　　　　　　　　　*Chapter 7 Trustee of the Estate*
　　　　　　　　　　　　　　　　　　　　　*of QB Wash dba Blvd Auto Spa*

　　　　　　　　　　　　　　　　　By:　　*/s/ Avrum J. Rosen*
　　　　　　　　　　　　　　　　　　　　　Avrum J. Rosen, Esq.
　　　　　　　　　　　　　　　　　　　　　Avrum J. Rosen, Esq.
　　　　　　　　　　　　　　　　　　　　　38 New Street
　　　　　　　　　　　　　　　　　　　　　Huntington, New York 11743
　　　　　　　　　　　　　　　　　　　　　(631) 423-8527
　　　　　　　　　　　　　　　　　　　　　arosen@ajrlawny.com
　　　　　　　　　　　　　　　　　　　　　atsionis@ajrlawny.com