**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 7 |
| QB WASH LLC, | |
| *d/b/a* Blvd Auto Spa, | Case No. 1-21-40301-ess |
| Debtor. | |

**JOINT STATUS REPORT ON 138-77 QUEENS BLVD LLC'S MOTION**
**FOR DISCOVERY PURSUANT TO BANKRUPTCY RULE 2004**

TO THE HONORABLE ELIZABETH S. STONG,
UNITED STATES BANKRUPTCY JUDGE:

138-77 Queens Blvd LLC ("***Landlord***"), by and through its attorneys, Windels Marx

Lane & Mittendorf, LLP; Zachary Silver, Scott Silver and Wash Funding LLC (collectively, the

"***Silvers***"), by and through their counsel, Klestadt Winters Jureller Southard & Stevens, LLP; and

David J. Doyaga, Sr., the Chapter 7 the Trustee (the "***Trustee***") of the Estate of QB Wash LLC

d/b/a Blvd Auto Spa (the "***Debtor***"), by and through his attorneys, the Law Offices of Avrum J.

Rosen, PLLC, respectfully submit this Joint Report concerning Landlord's pending Motion for

an Order Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure Directing the

Production of Documents by and Oral Examination of the Debtor's Principal and Certain Related

Parties and the Production of Documents by the Debtor (Doc. 43) (the "***Pending Motion***").

This Joint Report is submitted in connection with the continued hearing of the Pending

Motion, currently scheduled for **September 28, 2021 at 11:30 a.m.**

**Introduction**

Following the initial hearing on the Pending Motion, held July 27, 2021, the parties

conducted a series of telephone conferences and the Silvers and the Trustee made several

document productions that have resolved the majority of Landlord's documents requests.  As

further addressed below, however, the parties have been unable to reach agreement regarding

(1) certain documents concerning Wash Funding LLC ("***Wash Funding***"), (2) production of

communications between the Silvers, and (3) depositions of the Silvers.  In addition, in an effort to avoid further motion practice, Landlord brings to the Court's attention two additional document requests arising after the date of the initial hearing, on which the parties have conferred but not reached resolution.

### Documents Produced

Landlord's original document requests are reprinted in <u>Exhibit A</u> attached.  The Silvers and the Trustee have produced documents, and/or provided login credentials affording Landlord online access to responsive documents, and/or made representations sufficient to resolve Landlord's requests nos. 2 and 4-10 (as limited by Landlord).  Additionally, the Trustee has produced to Landlord the other documents produced to him by the Silvers and the Debtor (as limited by agreement with Landlord).

### Unresolved Matters

<u>Document Request No. 1 – Wash Funding Loan Documents</u>.  Based on Landlord's review of the documents previously produced to the Trustee, Landlord has narrowed its request to (1) documentation establishing that the promissory notes executed by the Debtor in favor of the Silvers' family trusts and later assigned to Wash Funding were executed on or about the date stated therein (June 9, 2017), and (2) documentation of all security interests created and/or perfected in favor of Wash Funding and/or the Silvers' family trusts in connection with the Wash Funding debt.  The Silvers have declined to make further production on these matters.

<u>Landlord states</u>:  (1) With respect to date of execution of the promissory notes, Landlord seeks to evaluate whether Wash Funding's $2.2 million claim is bona fide and whether there are grounds for recharacterizing or equitably subordinating it.  The Silvers have advised that there is no contemporaneous correspondence related to execution of the notes and have opposed producing electronic copies thereof, which could substantiate the

date of execution. Landlord submits that given the related party nature of Wash Funding's claim, it should be required to produce documents establishing that the relevant monies were originally advanced as debt rather than equity, particularly in the absence of any contemporaneous correspondence concerning execution of the notes.

(2) With respect to security for the Wash Funding debt, such debt was guaranteed by the Debtor's principal, Zachary Silver ("***Zachary***"), but the Silvers oppose producing documentation concerning any security interest in Zachary's assets, citing Landlord's potential claim against Zachary on the personal guaranty he executed with Landlord. The Silvers, through prior counsel, advised Landlord that Zachary was effectively judgment-proof because he had pledged his principal asset, a brokerage account, to Wash Funding.

Landlord submits that the timing and nature of the Silvers' efforts to secure the Wash Funding claim are relevant to both recharacterization and equitable subordination of that claim. Disclosure of any pledge documentation does not advantage Landlord – indeed, it would tend to deter Landlord's suit, the very reason the Silvers voluntarily disclosed it.

The Silvers state:

General Response: The Silver Parties maintain their objection to the Landlord's requested discovery for all the reasons stated in their original objection including, but not limited to: (i) the acrimony between the Silver Parties and the Landlord; (ii) the fact that there is an impartial and competent Chapter 7 Trustee charged with the duty to investigate and pursue claims against the Silver Parties, and to date, the Trustee has done his job and the Silver Parties have cooperated fully with his investigation and recovery efforts; and (iii) that the expansive amount of discovery sought by the Landlord is entirely unnecessary. That said, since appearing before the Court, the Silver Parties have

produced 1,132 pages of BATES stamped and cataloged responsive documents, plus provided the Landlord with unfettered access to the Debtor's POS system (which the Landlord is believed to have exclusive possession of), Patriot Software payroll system, and QuickBooks accounting system. The Silver Parties submit that this production is more than adequate to satisfy the Landlord's inquiries, all of which are duplicative of what the Trustee is charged to do and at this point, interfering with the Trustee's administration of this small estate.

<u>Specific Response</u>:  The Silver Parties do not have the contemporaneous correspondence that the Landlord seeks.  Further investigation regarding whether there may be a claim for either equitable subordination or recharacterization of the Silver Parties' claims against the Debtor is completely unnecessary and only relevant if: (i) the Silver Parties file proofs of claim (they have not yet); and (ii) it appears that there may be a distribution to general, unsecured creditors such that liquidation of the Silver Parties' hypothetical general, unsecured claims is even necessary.  This investigation is neither ripe nor necessary at this time.  Even if you assume for the sake of argument that the Silver Parties' hypothetical claims should be recharacterized and/or subordinated, the Trustee already negotiated an agreed settlement for the recovery of payments made to the Silver Parties that takes that into account.  Further, the Silver Parties have absolutely no intention of providing prejudgment discovery regarding the assets of Zachary Silver in the context of a Bankruptcy Rule 2004 investigation by a creditor with a potential direct claim against Zachary in the Debtor's case.  That information would be useful to the Landlord in the pursuit of claims against a non-debtor outside of this Court, and its discovery by the Landlord in the context of this proceeding is entirely improper.

Document Request No. 3 – Communications Between the Silvers and Privilege Log. Landlord's document request sought communications between the Silvers concerning the Debtor from January 1, 2020 through the filing of the Debtor's bankruptcy petition on February 8, 2021. The Silvers have produced eight emails between January and May 2020, and expressly omitted "emails where counsel was included." They have declined Landlord's requests to (1) confirm all responsive, non-privileged emails have been produced following a reasonable search, and (2) produce a privilege log.

Landlord states: Production of a privilege log is a standard requirement of a producing party, and is mandated by Fed. R. Civ. P. 45(e)(2), which governs subpoenas issued pursuant Bankruptcy Rule 2004. It is particularly warranted where one of the parties is an attorney who is well aware of the potential to shield responsive communications by including counsel on them. The failure to produce *any* communications between the Silvers in the *seven months* prior to the Debtor's bankruptcy filing further underscores the need for a privilege log here.

The Silvers state: The Silver Parties produced every responsive communication where counsel was not copied. The production of a formal privilege log is unduly burdensome under the circumstances. There is no reason that the Landlord cannot and should not be comfortable with the representation and production already provided. The only information that could be gleaned from communications that included legal counsel is the strategy and efforts to litigate with the Landlord prior to the Debtor's bankruptcy filing. There is absolutely no reason that the Landlord needs that information in the context of investigating the Debtor's financial affairs.

Depositions of the Silvers. The Pending Motion sought depositions of Zachary and his father Scott Silver ("*Scott*"). By way of compromise, Landlord proposed proceeding with the

deposition of Zachary, limited to topics raised in the motion papers for the Pending Motion, and addressing the issue of a deposition of Scott after Zachary's examination, with the understanding Landlord would be required to make a showing of how Zachary's examination was inadequate. The Silvers oppose both depositions.

<u>Landlord states</u>:    Examination of the Debtor's principal in this case is warranted by the array of related-party transactions entered into by the Debtor, the multiple payments to insiders and related parties in the months prior to the Debtor's bankruptcy filing, and the Debtor's admitted failure to record and account for its substantial cash receipts.    In addition, Landlord's review of the documents produced has identified numerous transactions outside the ordinary course of the Debtor's business, and as discussed further below, the New York State Department of Taxation and Finance ("***NYS Tax Department***") has now filed a proof of claim showing that an audit in 2019 concluded that the Debtor had failed to report over $1.4 million in sales tax revenue – substantially more than the total annual revenue reported by the Debtor in that year.

Landlord submits that its proposal to proceed with Zachary's deposition, limited to topics raised in the motion papers for the Pending Motion, and make Scott's deposition dependent on a proper showing later, represents a measured and appropriate resolution.

<u>The Silvers state</u>:  This is an incredibly small case when compared to the significant costs associated with discovery and litigation in a federal court.  Cases like this one are only administratively successful if the trustee expeditiously canvases the issues, comprehends the angles, and works towards a speedy resolution of any identified issues.  The Trustee recognizes this and was extremely effective at getting the lender Silver Parties to agree to an expeditious and sizable resolution of the claims that he identified against them.  The Landlord's continued unnecessary harassment of the Silver Parties at this point can only

seek to diminish the Silver Parties' appetite to resolve any other issues expeditiously which will adversely affect the estate by decreasing the amount of any hypothetical additional monetary settlement and driving up the Trustee's administrative costs as his counsel necessarily gets dragged into these matters.  The Landlord does not need a deposition of either Zachary or Scott Silver and has more than enough information to formulate whatever theory it wants to.  Again, the Debtor was a failed car wash.  The Silvers lost a lot of money and the Landlord did not receive rent for a year and got the space back with everything in it.  The Silvers are not happy with the Landlord's behavior any more than the Landlord his happy with them, but enough is enough.  This is a simple story that needs to come to an end.

Debtor Insurance Policy.  Landlord incurred approximately $25,000 in costs to remediate an oil spill discovered on the Debtor's former premises when it resumed possession, and submitted a claim to the Debtor's insurance carrier.  The carrier denied this claim based on certain policy language, and also cited the early termination of the policy, prior to the date of Landlord's discovery of the spill.  Landlord seeks to evaluate (1) the merits of the carrier's defenses, and (2) the circumstances related to the policy's termination, which occurred after the filing of the Debtor's bankruptcy petition but before Landlord resumed possession of the premises.  Landlord requested the Trustee obtain the policy on August 2, 2021 and has followed up on a number of occasions.  The Trustee has not yet produced the policy or committed to doing so.

Landlord states:  Landlord is willing to waive its claim against the Debtor's estate with respect to its spill remediation costs if it concludes it has a meritorious claim on the Debtor's insurance policy.  Production of the policy and an explanation for its early termination accordingly serves the interests of the Debtor's estate.

<u>The Trustee states</u>:  The Trustee's counsel provided all documents in its possession and has requested a copy of the policy from the Debtor's counsel.  The Trustee asserts that under no circumstances does the Landlord have any claim against the estate for this alleged oil spill.  The Trustee and the Landlord entered into a Stipulation which returned possession of the Premises to the Landlord on March 9, 2021 and under which the Landlord waives all post-petition claims against the estate in exchange for the immediate surrender of the premises.  The Landlord waited two days before meeting the Trustee's representative at the Premises to perform a walk through of the Premises.

<u>Sales Tax Audit Notices and Correspondence</u>.  On July 27, 2021 (the date of the initial hearing on the Pending Motion), the NYS Tax Department filed its Proof of Claim (Claim 3-1), which listed an audit assessment in the amount of $125,405.75, plus penalties and interest, among other items.  This assessment reflects unreported revenues of *over $1.4 million* (1.43 times the Debtor's reported revenue in 2019).  The NYS Tax Department has advised Landlord that it cannot produce the documents supporting this claim unless requested by the taxpayer or required pursuant to subpoena.  Landlord seeks the audit notice referenced in the Proof of Claim, together with any other documents reflecting the NYS Tax Department's audit findings.  The Silvers have asserted that they do not have any of these documents.  Landlord originally requested the Trustee assist in obtaining this documentation on August 30, 2021 and has followed up on several occasions.  The Trustee has not yet provided the documentation or committed to doing so.

<u>Landlord states</u>:  Review of the NYS Tax Department's audit findings is warranted both (1) to obtain insight into the Debtor's actual revenue, and (2) to evaluate the bona fides of the NYS Tax Department's priority claim.

The Trustee states:  The NYS Tax Department filed a Proof of Claim based upon an audit.  The Trustee has requested the documents requested by the Landlord from the Debtor's counsel and has not yet received them.  The Trustee has examined that claim and sees no good faith basis to challenge that Claim and has refused to expend estte funds to do so, simply because that claim is a priority claim that diminishes the return to the Landlord on its pre-petition claim.

Respectfully submitted,

Dated: New York, New York
September 23, 2021

WINDELS MARX LANE & MITTENDORF, LLP
*Counsel for 138-77 Queens Blvd LLC*


By:    /s/ Leslie S. Barr
Leslie S. Barr (lbarr@windelsmarx.com)
156 West 56th Street
New York, New York 10019
Tel. (212) 237-1000 / Fax. (212) 262-1215

Dated: New York, New York
September 23, 2021

KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP
*Counsel for Zachary Silver, Scott Silver and Wash Funding LLC*


By:    /s/ Fred Stevens
Fred Stevens (fstevens@klestadt.com)
Christopher J. Reilly (creilly@klestadt.com)
200 W 41st Street, 17th Floor
New York, New York 10036
Tel. (212) 972-3000 / Fax. (212) 972-2245

Dated: Huntington, New York
September 23, 2021

LAW OFFICES OF AVRUM J. ROSEN, PLLC
*Counsel for David J. Doyaga, Sr., Chapter 7 Trustee of the Estate of QB Wash LLC dba Blvd Auto Spa*


By:    /s/ Avrum J. Rosen
Avrum J. Rosen, Esq. (arosen@ajrlawny.com)
Alex E. Tsionis, Esq. (atsionis@ajrlawny.com)
38 New Street
Huntington, New York 11743
Tel. (631) 423-8527